COLUMBIA MILL Co. *vs.* NATIONAL BANK OF COMMERCE.

Argued Dec. 22, 1892. Decided Jan. 13, 1893.

**Authority of Agent Shown by the Principal's Course and Manner of Business.**

On the question of authority of an agent of a business concern, the party dealing with him may prove the course and manner of business in that concern as connected with such agent, from which actual authority may be implied. though the party did not know of such course and manner of business at the time of dealing with the agent.

**Appearance of Authority, Negligently Permitted, Binds the Principal.**

A principal may be bound by the appearance of authority, which his negligent conduct of his business permits his agent to have.

**Charge Construed.**

A charge to the jury construed, and *held* to have withdrawn the last foregoing proposition from them.

**Exceptions to Charge, Held not Specific and Several.**

When defendant began to state his exceptions to the charge, the court said: "The exceptions will be made so broad that they will cover all

requests of either plaintiff or defendant, either as refused or modified by the court." *Held*, this did not dispense with the necessity of taking exceptions so as to be made of record, nor give leave—the court below could not do so—to make the exceptions in this court.

**Same—Indefinite.**

The court refused *eight* of defendant's requests, and it excepted "to the not giving of the *four* requests, as asked for by the defendant," without specifying which four. *Held*, not a good exception.

**Assignment of Errors must Separately State each Error.**

An assignment of error may specify several rulings, involving the same error ; but when rulings are upon different subjects, and present different points, they must be assigned separately.

Appeal by defendant, the National Bank of Commerce, from an order of the District Court of Hennepin County, *Hicks*, J., made August 10, 1892, denying its application for a new trial.

The plaintiff, the Columbia Mill Company, was in 1890, engaged in the manufacture and sale of flour at Minneapolis, and had for six years kept its bank account with defendant. It averaged over $100,-000 a month. In payment of its bills for flour, its customers sent to it checks and drafts payable to its order. Leo Heilpern was its bookkeeper and had charge of the petty cash received at the office for local sales at retail. Between April 14 and September 12, 1890, he feloniously purloined nineteen checks and drafts belonging to plaintiff and payable to its order, and with a rubber stamp wrongfully placed upon the back of each the indorsement of plaintiff, "Columbia Mill Co.," and signed his own name underneath. From time to time he sold these checks and drafts to the defendant and converted the proceeds to his own use. This action was to recover of the bank the gross amount of these checks and drafts, $7,546.59, and interest. The questions litigated were whether Heilpern had authority from the Mill Company, express or implied, to indorse and sell checks and drafts, and whether if he did not, the Mill Company had negligently permitted it to appear that he had.

At the first trial the jury disagreed. It was again tried January 15, 1892. The jury returned a verdict for plaintiff for $8,188.20. The defendant moved for a new trial, and being denied, appeals.

v.52m.—15

*Koon, Whelan & Bennett* and *Eustis & Morgan*, for appellant.

The question is, whether the plaintiff so conducted its business, and held the agent Heilpern out, as to lead the defendant reasonably to suppose that he possessed the authority which he assumed to exercise.

Where the acts are of such character and so continuous as to justify a reasonable inference that the principal had knowledge of them, and would not have permitted them if unauthorized, the acts themselves are competent evidence of agency.    1 Amer. & Eng. Encyc. of Law, 340; *Reynolds* v. *Collins*, 78 Ala. 94; *Proctor* v. *Tows*, 115 Ill. 138; *Weaver* v. *Ogletree*, 39 Ga. 586; *Friedlander* v. *Cornell*, 45 Texas, 585.

The plaintiff's manager, Mr. Zeidler, knew, or in the exercise of ordinary care and prudence would have known, that Heilpern and and his predecessors in office were accustomed to indorse and collect the checks from the retail department and obtain the money thereon for the purposes of the business.    The practice grew up under its first bookkeeper, was followed by the second, and continued under Heilpern, the third.    It covered a period of eight years, and it is manifest that a reasonable surveillance or oversight of the business and the general methods pursued by the bookkeepers would have revealed the fact.    *McCord* v. *Western Union Tel. Co.*, 39 Minn. 181; *Webster* v. *Wray*, 17 Neb. 579; *Kasson* v. *Noltner*, 43 Wis. 646; *Lorton* v. *Russell*, 27 Neb. 372; *Johnson* v. *Donnell*, 90 N. Y. 1.

The scope of Heilpern's agency was to be determined, not alone from what plaintiff's officers may have told him to do, but from what they knew, or in the exercise of ordinary care and prudence ought to have known, he was doing.    *Kingsley* v. *Fitts*, 51 Vt. 414; *McCormick* v. *Kelly*, 28 Minn. 135.

*Jackson & Atwater*, for respondent.

Under the issue it was incumbent on defendant to establish:

1. That it paid the checks in good faith, which for the purposes of this case would require an honest belief on the part of the bank officials that Heilpern had authority from the Mill Company to make

indorsements and get the checks cashed, instead of depositing them to the Mill Company's credit in the usual manner.

2. That this honest belief on the part of the bank officials was reasonably induced by some act, language or course of conduct on the Mill Company's part which "held Heilpern out" as apparently possessing such authority. *People* v. *Bank of North America*, 75 N. Y. 547; *Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *Frank* v. *Chemical Nat. Bank*, 84 N. Y. 209; *Welsh* v. *German American Bank*, 73 N. Y. 424; *Wheeler* v. *Guild*, 20 Pick. 545; *Atlanta Nat. Bank* v. *Burke*, 81 Ga. 597; *First Nat. Bank* v. *Whitman*, 94 U. S. 343.

GILFILLAN, C. J.   The plaintiff was a corporation in the business, at Minneapolis, of manufacturing and selling flour, and the defendant was a bank at that place.

The action is for the conversion of nineteen checks drawn by different persons or firms upon different banks or concerns, each payable to the order of, and the property of, the plaintiff.   The allegations of the complaint are that one Leo Heilpern feloniously abstracted and purloined the checks from plaintiff, wrongfully and without authority impressed on the back of each, with a rubber stamp, the words "Columbia Mill Co.," and wrote underneath his name, L. Heilpern, and wrongfully sold and disposed of them to defendant, which collected and appropriated to its own use the money called for by them.   Heilpern was plaintiff's bookkeeper and cashier; that is, he had charge of its books and its "petty cash," *i. e.* the payments received upon its sales at retail.

The sole controversy was on Heilpern's authority to dispose of and receive the money for the checks.   It was conceded that he had no express authority to do so, and the question was narrowed to that of implied authority, and the further question, if it be not included in that, as to whether the plaintiff had either intentionally or negligently so conducted its business with defendant, or permitted it to be so conducted, that it had a right in good faith to believe, and did believe, that Heilpern had the authority he assumed to exercise, and,

acting on and because of such belief, received the transfer of the checks, and paid him the money.

It appeared that, when the relation of banker and patron between defendant and plaintiff began, the latter left in the signature book of the former the signature of S. Zeidler, its treasurer, as of the only person authorized to sign for it in its transactions with the bank, and except during a short period, when he was absent, his was the only signature in the bank for that purpose.

It also appeared that there grew up and continued for years a usage that when plaintiff sent to the bank, for deposit to its credit, checks payable to its order, it made no other indorsement on them than by impressing them with a rubber stamp. Whether there was a similar usage in any other bank is immaterial. It existed between these parties.

It also appeared that Heilpern and his predecessors in employment as bookkeeper and cashier, extending over a period of two or three years, were accustomed to take or send to the bank, and transfer to it, and receive the money for, checks, mostly small ones, payable to its order, with no indorsement except with the stamp, or with none at all.

It was upon this custom mainly that defendant relied to show implied or at least apparent authority in Heilpern to transfer the checks without the signature of Zeidler, and receive the money for them.

And because one dealing with an agent may show actual authority in him,—that is, such authority as the principal in fact intended to vest in the agent, although such intention is to be shown by acts and conduct, rather than by express words,—without showing that he (the person dealing with the agent) knew when he dealt with him of the acts and conduct from which the intention is to be implied, it was competent for defendant to show the course and manner of conducting business in the office of plaintiff, so far as the bookkeepers and cashier had charge of it. The officers of plaintiff testified that Heilpern had no authority to transfer the checks and receive the money, and that they never knew of the bookkeeper and cashier do-

ing so with plaintiff's checks.   But the jury were not bound to their testimony.   Such a manner of conducting the business in the office might have been proved as would have justified the jury in finding that the officers must have known of the custom of the bookkeeper and cashier in regard to checks; and had that been found, and that it was acquiesced in by plaintiff, the intention to vest authority might have been implied.

For the sake of convenience, we make a distinction between implied authority—that is, such as the principal in fact intends the agent to have, though the intention is implied from the acts and conduct of the principal—and apparent authority,—that is, such as, though not actually intended by the principal, he permits the agent to appear to have.   The rule as to apparent authority rests essentially on the doctrine of estoppel.   The rule is that, where one has reasonably and in good faith been led to believe from the appearance of authority which a principal permits his agent to have, and because of such belief has in good faith dealt with the agent, the principal will not be allowed to deny the agency, to the prejudice of the one so dealing.

One may be estopped by his acts of culpable negligence, as well as by his intentional acts; and if through culpable negligence the plaintiff permitted Heilpern to appear to the bank to have authority to transfer the checks and receive the money, and the latter reasonably and in good faith was induced by such appearance to believe he had that authority, and on that belief received and paid for the checks, plaintiff cannot deny the authority, for to permit it to do so would sanction a fraud.

The defendant complains that the court, in its charge, withheld from the jury the proposition that the plaintiff might be bound by the appearance of authority which it, through negligence, permitted Heilpern to have.

Before coming to the part of the charge claimed to have that effect, we will note some matters of practice in the case.

Some of the assignments of error specifying rulings of the court on offers of evidence show a misapprehension of rule ix. of this court.

33 Minn. xix., (25 N. W. Rep. iii.) That rule intends that each error shall be stated in a specification by itself, which shall be numbered. Different rulings of the court which proceed on the same error (if it be one) may be assigned as one, but where the subjects of the rulings are different, presenting different points, if the rulings are erroneous, each is an error by itself, and must be separately assigned. Otherwise all the rulings during the trial might be grouped under one assignment, and the purpose of the rule defeated.

After the charge of the court, when the defendant began to state its exceptions, the court said: "The exceptions will be made so broad that they will cover all requests of either plaintiff. or defendant, either as refused or modified by the court." The defendant seems to have understood this as dispensing with the necessity to take exceptions. But, at most, it could be taken only as leave to the parties to state their exceptions specifically when they should come to make up the "case" or bill of exceptions; and even as such it is not commendable practice, for the purpose of an exception to the charge is to call the attention of the trial court, before the jury retires, to specific instructions or instructions refused, so that the court may make any proper correction before it is too late, which it is, when the case or bill of exceptions comes on for settlement. The remark did not give leave—the court below could not do so—to make up the exceptions in this court. We can consider, therefore, only those parts of the charge or refusals to charge to which specific exceptions appear in the record.

The defendant presented fourteen requests to charge, of which eight were refused. Defendant excepted "to the not giving of the four requests, as asked for by the defendant," without specifying which four. This, of course, was not a good exception.

To return to the part of the charge complained of. The court, at the request of the defendant, charged: "If you find that the plaintiff so conducted its business with the defendant as to lead the defendant reasonably to believe that Heilpern possessed the authority which he assumed to exercise in the cashing of the checks in question, your verdict will be for the defendant." This, in giving other

requests by defendant, was several times reiterated in substance, though in different terms, sometimes more full; and, as I think, left it to the jury to give the specified effect to plaintiff's conduct of its business, though through negligence. The part of the charge excepted to, and claimed to have withdrawn from the jury the matter of negligence in the conduct of the business as bearing on the question of authority, we do not quote in full, as it is very long, and the pith of it may appear from only a part of it. After referring to the transfers of checks upon stamped indorsements by the bookkeepers, by Heilpern's predecessors and by him, the court said: "The plaintiff claims that it had no knowledge of such payment upon such indorsements. Now, unless you find from the evidence that the plaintiff or its duly-authorized officers in the present instance, (and the duly-authorized officers would be only the president, vice president, general manager, secretary, treasurer,) or either of them, knew of the manner in which such indorsements and payments had been made, you cannot find that Leo Heilpern had any such implied authority; the implied authority in this case, resting upon what we call a 'ratification' by the mill company of the acts of its cashiers and bookkeepers; and you cannot find that the mill company ratified any act of which it had no knowledge." In the part of the charge excepted to, this is, in substance, reiterated, the court in each instance using the term "implied authority." If by this the court meant, or if the jury must have understood it to mean, to qualify the part of the charge first herein quoted, so as to exclude from the consideration of the jury any appearance of authority which plaintiff's negligent conduct of its business may have permitted its bookkeepers to have, it was error. After a perusal of the entire charge, to ascertain in what sense the jury must have understood the court to use the term "implied authority," the majority of this court are of opinion (in which, though I have doubts, I do not concur) that the jury must have understood that, in order to make a case of apparent authority, it was not enough that the plaintiff's negligent conduct of its business permitted its bookkeepers and cashier to appear to have it, unless such appearance of authority was actually known to it.

This, of course, renders a reversal inevitable, and renders unnecessary the consideration arising on rulings excluding or admitting evidence, which need not arise on another trial.

Order reversed.

VANDERBURGH, J., took no part in this decision.

(Opinion published 53 N. W. Rep. 1061.)