ELIZA A. HERRICK v. FRANK C. MOSHER and Others.[1]

January 21, 1898.

Nos. 10,865—(257).

**Foreclosure of Mortgage—Payment to Agent as a Defense—Evidence.**
One K. was the agent of plaintiff to lend money to third parties on real-estate securities, and to receive payment of the same. The defendant, having purchased from K. land upon which there was a mortgage to plaintiff, executed by a former owner, but which K. had assumed and agreed to pay, and against which K. was obligated to defendant under the covenants of his deed to protect the title, paid a part of the purchase money to K. at the time of the delivery of the deed, and subsequently transmitted to him a draft for the balance of the purchase money, which was just equal to the amount due on plaintiff's mortgage. At the time defendant sent the draft he had no knowledge of the existence of any relation of principal and agent between K. and plaintiff, or that they had any business relations whatever with each other. K. appropriated the money to his own use, and never paid or accounted for it to plaintiff. In this action to foreclose the mortgage, defendant interposed as a defense that he had paid it to plaintiff's agent, K. *Held*, that the evidence did not establish the defense; that, construed most favorably to the defendant, it merely tended to prove that defendant sent the money to K. as his agent, to be applied in payment of the mortgage.

Appeal by plaintiff from a judgment in favor of the defendant Frank C. Mosher entered in the district court for Dodge county, pursuant to the findings and order of Buckham, J. Reversed.

*Kitchel, Cohen & Shaw,* for appellant.

*Littleton & McCaughey* and *Robert Taylor,* for respondents.

MITCHELL, J.

In an action to foreclose a mortgage on land owned by the defendant the defense interposed was that the defendant had paid the mortgage to one Kelley, plaintiff's duly-authorized agent.

The following facts were admitted, or conclusively proved: Plaintiff intrusted $1,600 to Kelley as her agent, to lend to third parties on real-estate security. In order to secure the money for his own use, Kelley resorted to the following device: In April,

1889, he conveyed to one Hammond, a clerk in the office, a quarter section of land, and placed the deed on record. On the same day he caused Hammond to execute a note for $1,600 payable in five years, to the order of plaintiff, with annual interest, and a mortgage running to plaintiff on the land referred to as security for the payment of the note, placed the mortgage on record, and then transmitted the note and mortgage to plaintiff, reporting it as a loan made to Hammond. The whole transaction, as between Kelley and Hammond, being a scheme for Kelley's benefit, in which Hammond had no interest, the latter, in 1890, reconveyed the land to Kelley, subject to the mortgage, which Kelley "assumed and agreed to pay." This deed was also placed on record. To continue the deception, Kelley regularly paid the interest on the mortgage, and transmitted and reported it to the plaintiff as having been collected from Hammond.

About the 1st of April, 1895, Kelley, through his agent, Cutler, bargained and sold the land to the defendant for the agreed price of $3,000. He executed and delivered to defendant a deed with full covenants of title except that the covenant against incumbrances excepted "a mortgage of $1,600 to Eliza Herrick, with interest from April 1, 1895." This was the first notice which defendant had of the existence of any such mortgage. He accepted the deed, and placed it on record. At the time of the delivery of the deed he paid on the purchase price $1,400, and about a month afterwards sent Kelley a draft payable to his (Kelley's) order for $1,609.34, which, it will be observed, would be exactly the balance of the purchase money, with interest, as well as the exact amount due on the mortgage to the plaintiff as stated in the deed from Kelley to the defendant. This is the "payment" relied on as a defense. Kelley never paid or accounted for any of this money to plaintiff, but continued up to July 1, 1896, to pay interest on the mortgage as before as if collected by him from Hammond. He, however, sent to defendant a forged satisfaction of the mortgage purporting to have been executed by plaintiff. Defendant placed this satisfaction on record, supposing it to be genuine.

Defendant had no personal acquaintance with either plaintiff or Kelley, and there is no evidence that either at the time he accepted

the deed, or at the time he transmitted the draft for $1,609.34, he had any knowledge of any agency on the part of Kelley for plaintiff, or that they had any business relations whatever with each other.

The first contention of plaintiff's counsel is that, whatever may have been Kelley's authority generally, as plaintiff's agent, to receive payment of money for her, yet that under these facts defendant's payment was to Kelley personally, and not as agent for plaintiff. The only evidence as to the payment or the purposes for which it was made is the testimony of defendant himself. All that Kelley testifies to on the subject is that he received the draft which defendant sent him. Defendant's testimony is as follows: Direct examination:

"Q. I will ask you if you paid the mortgage that was on it when you bought the land, and, if so, to whom did you pay it? A. Sent the money to A. F. Kelley. Q. How much did you pay him? A. For the whole piece? Q. No, the mortgage. A. $1,609.34. Q. How did you pay it? A. I bought a draft at the bank at West Concord. * * * Q. I will ask you if that is the draft [paper shown to witness]? A. Yes. * * * I paid this money for this incumbrance that was on the land, and known as the 'Hammond Mortgage.'"

Cross examination: "Q. What arrangement did you make with Cutler at that time [when deed was delivered]? * * * A. I told him * * * I had the money, and I wanted to pay the whole mortgage up. * * * Q. What arrangement did you finally make about it? A. I paid him his $1,400, and I was to send him the balance on the mortgage as soon as I got it; and I sent it in about a month. Q. You did not have, then, all of the $3,000 at that time to pay it? A. I did not have, probably, $50 with me, but I had it where I could get it and that right off. * * * At that time I also had enough to pay the whole consideration. Oh, I might lack $50 or $75, or a little like that, but I did not lack but a very little. I was to send on my money as soon as it was convenient for me, and I found it convenient about May 1st to send it on." "Q. When you sent the other $1,600, you were to get that mortgage satisfied? A. Yes, sir." "Q. You say it was to pay the mortgage. It was also to pay the balance of the amount that you agreed to pay over and above the amount that you had already paid? A. That is what I am talking about."

Redirect Examination: "Q. The amount stated in that draft was the amount due on the mortgage at that time? A. Yes, sir. Q. You had an understanding with Mr. Cutler that you would send the amount of this mortgage to Mr. Kelley? A. Yes, sir."

The letter to Kelley accompanying the draft was not produced in evidence. Bearing in mind the relation of the parties to each other and to the land was that of vendor and vendee, and that Kelley was obligated to defendant under the covenants of his deed to protect the title against this mortgage, and the fact that there was no evidence that the defendant knew of any agency on the part of Kelley for plaintiff, the most favorable construction for the defendant that can be placed on the evidence is that he intrusted the money to Kelley as his agent, to be used in paying off the mortgage, —in other words, that the transaction was one between defendant and Kelley personally, and not as agent for the plaintiff; and that, until paid over or accounted for to her by Kelley, the money remained the property of the defendant, and not of the plaintiff. Assuming that the money was paid to Kelley, not as the purchase money of the land due to him, but to pay the plaintiff's mortgage, it is clear to us that defendant might have recalled it any time before it was paid or accounted for to plaintiff. If so, it was defendant's money, and not plaintiff's.

Counsel cite Columbia v. National, 52 Minn. 224, 53 N. W. 1061, on the proposition that, if Kelley had actual authority, as plaintiff's agent, to receive payment of the mortgage, it was immaterial whether defendant did or did not know it. The case is not in point, for the reason that in that case the bank dealt with Heilpern as the agent of the mill company, and Heilpern assumed to indorse the checks and drafts as such agent; and all that was said was that the bank might prove Heilpern's implied, but actual, authority to indorse the checks by the acts and conduct of the mill company without showing that it (the bank) knew, when it dealt with Heilpern, of the acts and conduct from which the implied authority was to be inferred.

Inasmuch as, for this reason, the evidence did not justify the findings of the trial court to the effect that defendant had paid the mortgage to plaintiff, it is unnecessary to consider the other questions argued by counsel.

Judgment reversed, and new trial granted.