JEANETTE THOMAS v. FRANK A. SWANKE and Others.

January 23, 1899.

Nos. 11,417—(204).

**Authority of Agent to Receive Payment of Mortgage.**

> Evidence considered, and *held*, that it does not sustain the finding of the trial court to the effect that the plaintiff's agents had actual authority to receive payment for her of a note and mortgage which they did not at the time have in their possession.

Action in the district court for Traverse county to foreclose a mortgage given to secure the payment of $550. The defendant Keating pleaded payment, and prayed that the mortgage be discharged and satisfied of record. The cause was tried before C. L. Brown, J., without a jury, who ordered judgment in favor of defendant Keating. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Hahn, Belden & Hawley*, for appellant.

*Owen Morris*, for respondents.

START, C. J.

This was an action to foreclose a real-estate mortgage made by Frank A. Swanke and wife to the plaintiff to secure the payment of their note to her, dated March 24, 1891, and due in five years, with semiannual interest. The defense was payment.

The trial court found as a fact that on March 18, 1896, defendant Keating, the owner of the mortgaged premises, paid $589.25 in full payment of the principal and interest of the mortgage debt to A. F. & L. E. Kelley, who were then the agents of the plaintiff and authorized to receive such payment for her; and, as a conclusion of law, that the defendant was entitled to judgment that the mortgage was paid, and that it be satisfied of record. The plaintiff appealed from an order denying her motion for a new trial.

The assignments of error present for our consideration two general questions: First. Did the trial court err in receiving evidence relating to the general course of business conducted by the Kelleys for Leander Thomas, the husband and agent of the plaintiff? Second. Was the evidence sufficient to support the finding that the Kelleys were the agents of the plaintiff and authorized to receive the payment for her at the time it was made?

1. The first question must be answered in the negative. The evidence tends to show that the husband was the agent of plaintiff, and had full authority from her to do as he saw fit in the matter of investing her money for her. He dealt extensively with the Kelleys as loan agents, and sent his wife's money to them, as he did his own, to be loaned for her. The evidence warrants the inference that he intended to and did confer upon the Kelleys the same authority as to investing and caring for his wife's money as he did with reference to his own. The evidence, then, as to the course of business between them in the management of his loans was competent and material for the purpose of showing the extent of the Kelleys' authority in the premises.

2. The serious question in this case is whether the finding, that the Kelleys were the agents of the plaintiff and authorized to receive the payment of the mortgage debt for her, is sustained by the evidence. At the outset we are confronted with the admitted fact that when the payment was made the note and mortgage were in

the possession of the plaintiff. This, and the further fact that the payment was made six days before the due day, are entitled to great weight in determining the question of the authority of the Kelleys in the premises, and cast upon the defendant the risk and burden of establishing the actual authority of the Kelleys. Budd v. Broen, supra, page 316.

Evidence was given on the trial of this case tending to show that Leander Thomas, the husband and agent of the plaintiff, commenced doing business with the Kelleys as loan agents in 1880, and so continued until his death, in 1895, during which time they made many loans for him, collecting interest and principal, and reloaning the principal in a number of instances. They, on March 15, 1886, made a loan of $550 for the plaintiff to a party by the name of Johnson, receiving a draft therefor on the 18th of the same month. This loan was managed by the husband, as he managed his own loans, and at the maturity of the Johnson loan the husband sent to the Kelleys the note and mortgage, with a release, with direction to reloan the principal. The plaintiff never had any correspondence with them. The Kelleys collected this loan, and reloaned the principal to Swanke, taking a real-estate mortgage to the plaintiff as security, which is the mortgage in question.

There was also evidence tending to show that the Kelleys sometimes collected interest on loans for Leander Thomas before receiving the coupons, and frequently the principal before receiving a satisfaction of the mortgage; also that they occasionally remitted interest before they collected it or received the coupons therefor; that such was the case as to one of plaintiff's coupons; and, further, that the plaintiff, after the death of her husband, assented to a statement by her daughter to one of the Kelleys in reference to the loans made by them for her and her husband to the effect that she wanted $500 or $600 paid, and the rest reloaned. This was contradicted by the plaintiff, who testified that she never authorized the Kelleys to collect either interest or principal for her unless the coupon or note was forwarded to them. In this she was corroborated by the daughter, who was the administratrix of her father's estate, and also managed plaintiff's affairs. The coupon due March 24, 1896,— the one paid by the defendant when he paid the principal,—was not

forwarded to the Kelleys until June 16. The alleged fact that the Kelleys often collected interest and principal for Leander Thomas without the coupon or satisfaction being first sent to them rests upon the testimony of one of the Kelleys. On his cross-examination he stated that he could not give the dates or the names of such transactions without referring to the account books of the firm, but by such reference he could do so. The examination on this point was not further pressed.

The evidence is undisputed that the defendant Keating, on March 18, 1896, called upon one of the Kelleys at their office, and stated that he wished to pay the mortgage, as he had purchased the land, and inquired if Kelley had the note and satisfaction. He was answered in the negative, with an explanation to the effect that frequently the papers did not come until after the payments were made, and, further, that the money was not to be sent to the owner, but was to be reloaned. Thereupon the defendant paid the Kelleys the full amount of the mortgage debt, for which they gave him a receipt in full payment of the mortgage, in which it was agreed that a release should be furnished.

The defendant, for some 10 years prior to this transaction, had frequently paid loans to them, but there was no evidence that the plaintiff or her husband was interested in any of such loans. The Kelleys never paid the money to the plaintiff, nor reloaned it for her. Now, the mere fact that the Kelleys made the loans for the plaintiff and her husband, and sometimes collected the interest without the coupons being first sent to them, does not warrant the conclusion that they were authorized to collect the principal of the loans before the securities were sent to them for collection. Budd v. Broen, supra.

There is no evidence in the record in this case tending to show an implied authority on the part of the Kelleys to collect such principal without the securities resulting from the course of dealing between Leander Thomas and the Kelleys as to the collection of such loans. It is true, Kelley testified that he did in some cases collect the principal of the loan without receiving a satisfaction of the mortgage, but he did not testify that he ever collected the principal before he received the securities.

Neither is there any evidence to show that Thomas, who was dead at the time of the trial, ever knew that the Kelleys ever assumed to collect the principal of any loan before receiving the securities or a satisfaction of the mortgage, from which a recognition and admission of their authority might be implied, as was the fact in the cases of Hare v. Bailey, 73 Minn. 409, 76 N. W. 213, and General Convention C. M. v. Torkelson, 73 Minn. 401, 76 N. W. 215, relied on by the defendant.   Here is where the defense in this case breaks down. There was no evidence that Thomas knew that the Kelleys ever collected the principal without the securities, although counsel for the defendant seems to assert the contrary in his brief.   He, however, refers us to no evidence to support the claim.   We can discover no such evidence in the record; on the contrary, it appears from the letters of Leander Thomas to the Kelleys that it was his custom to forward the securities to them when he desired them to collect the principal of his loans.

The finding in question is not sustained by the evidence, and the order appealed from is reversed, and a new trial granted.