ROSCOE N. JACKSON v. MUTUAL BENEFIT LIFE INSURANCE COMPANY.

February 1, 1900.

Nos. 11,876—(190).

**Life Insurance—Principal and Agent—Notice.**

Notice to an agent, to constitute constructive or implied notice to the principal, must be of facts within the scope of the agency, or of or concerning business engaged in by the agent by the authority of the principal.

### Course of Dealing by Agent—Notice to Principal.

A principal cannot be held to have permitted or acquiesced in a course of dealing on the part of his agent beyond his authority, unless he had notice of such course of dealing, or the circumstances surrounding it were such as to make it the duty of the principal to inquire.

### Declarations of Agent—Hearsay.

Declarations and statements of an agent, not made in the course of his agency, but of and concerning past transactions in the principal's business, are hearsay and incompetent.

Action in the district court for Rice county to recover $875.28 and interest for breach of contract, being the amount of two promissory notes alleged to have been given by plaintiff to defendant in payment of an insurance premium on policies which were not delivered. The case was tried before Buckham, J., and a jury, which rendered a verdict in favor of plaintiff for $923.60; and from an order denying a motion for a new trial, defendant appealed.     Reversed.

*Wilson & Van Derlip,* for appellant.

*Anson L. Keyes,* for respondent.

BROWN, J.

This is an action to recover the amount paid by plaintiff upon two promissory notes by him given to an agent of defendant in alleged payment of the premium on two life insurance policies, which policies were never delivered to him, but which notes were transferred by the agent to an innocent purchaser, to whom plaintiff so paid them. Plaintiff had a verdict in the court below, and defendant appeals from an order denying a new trial.

Although the evidence may be a little conflicting with respect to one or two matters, there is no serious controversy about the main facts. One Little was in December, 1894, and for some years prior thereto, engaged in soliciting applications for life insurance in defendant company. He was appointed such agent by, and reported to, a state agent of defendant, whose headquarters were at Minneapolis. He was first appointed by one Shepherd, and again by one Joyce, who succeeded Shepherd as defendant's state agent in September, 1894. In December, 1894, he procured from plaintiff an application for two policies in said company, of $5,000 each; and, at the time of making and signing the same, plaintiff made and

delivered to the agent his two promissory notes, for $395 each, in payment, as plaintiff alleges, of the first annual premium on the policies. At the same time said Little signed and delivered to plaintiff a receipt in the following words and figures, to wit:

"The Mutual Benefit Life Insurance Company.
752 Broad Street, Newark, N. J.
Received Dec. 6, 1894, from Dr. R. N. Jackson, $790.00, being the first annual premium on $10,000, at age 38, which entitles the said R. N. Jackson to a policy, in accordance with the application, for the said sum of $10,000, provided the application of the said R. N. Jackson is accepted by the company, in which case this receipt will be binding on the company from the date of the medical examination. If declined, the premium will be returnable on surrender of this receipt. Frank E. Little, Agent." Indorsed on side: "Payments for premiums are valid only when made to a duly-authorized agent of the company in compliance with its rules.
Amzi Dodd, President."

The applications were forwarded to the company, and the policies were issued thereon, and returned to Little for delivery to plaintiff. Little never delivered them, or even called plaintiff's attention to the fact that he had them in his possession. Upon being called upon by the state agent, Joyce, to report thereon, he returned the policies to Joyce, with the statement that he could not deliver them. The plaintiff claims that defendant failed and refused to deliver the policies as required by the terms of this receipt, and he asks to recover the amount of the notes, which he was compelled to pay to an innocent purchaser. The state agent, Joyce, tendered the policies to plaintiff in March, 1895, but plaintiff refused to accept them on the ground and for the reason, as now claimed, that the tender or offer was coupled with a condition that he pay the premiums. This claim on plaintiff's part is not sustained by the facts, as we shall see later.

1. The main issue in the case, and the one contested in the court below, is whether the defendant is bound by the act of Little in taking plaintiff's promissory notes in payment or settlement of the premiums due. The question turned in the court below upon whether Little had implied authority to so act. We are of the opinion that the evidence as presented in the record is insufficient to show such authority.

Little had no express authority to so act, and, on the contrary, was expressly forbidden by defendant to take or receive anything but cash in payment of premiums. He had been in the habit of taking the promissory notes of applicants in settlement of such premiums. It was his custom to do so. But in all instances the notes were payable to himself personally, and he negotiated them and remitted the money to the state agent. In some instances he sent some of the notes to the state agent, who, in turn, negotiated them, and reported the money to the company. In no instance did Little or the state agent send any of such notes to the defendant, and the record wholly fails to show that defendant had any sort of notice of such custom or habit of Little. The plaintiff claims to have known of this habit and custom of Little, but from the evidence it is clear that his knowledge was confined to notes due in sixty days,—the time within which Little had to remit to the company,—and notes payable to Little personally. But there is no suggestion that he understood that such notes were sent to the company, or that the company knew anything about them; and the circumstances surrounding such custom and habit were not such as to make it the duty of the company to inquire, or to justify an inference that it had notice. The notes given by plaintiff were payable to Little personally, not as agent of defendant, and were due and payable in one and two years. They were never delivered to defendant or to its state agent, but were negotiated by Little, who converted the proceeds to his own use. He never at any time informed Joyce or defendant that plaintiff had given the notes, and, so far as the record shows, no notice of any kind in reference thereto reached Joyce or defendant for a year after the transaction, and more than seven months after plaintiff had refused to receive the policies.

The doctrine of implied authority in an agent to do a particular act beyond the scope of his agency rests on principles of estoppel, and on the ground that it would be unjust and inequitable to permit a principal to repudiate the acts of an agent, confessedly beyond his express authority, but which the principal knowingly permitted. To make out a case of implied authority in an agent to do acts beyond and in violation of his express authority, notice to the

principal must be shown.  He cannot be held to have ratified, permitted, or acquiesced in a course of dealing or conduct on the part of his agent unless he had notice of such conduct or course of dealing, or the' facts surrounding such course of dealing were such as to make it his duty to inquire.  Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Budd v. Broen, 75 Minn. 316, 77 N. W. 979; Thomas v. Swanke, 75 Minn. 326, 77 N. W. 981.

In this case there is no showing whatever that defendant had any notice that Little was in the habit of taking the promissory notes of applicants in payment of premiums, unless notice be imputed to it from the fact that its state agent had such notice.  Little's authority was limited to soliciting and receiving applications for insurance, collecting the first annual premium, and delivering the policies when sent to him for that purpose.  He had no authority to receive anything but cash in payment of such premiums.  His instructions on this subject were explicit.  The state agent had no greater authority.  So far as the collection of premiums was concerned, both were bound and limited by the same restrictions.  Neither could receive anything but money.  In view of this, it is difficult to understand upon what principle notice should be imputed to defendant from the fact that the state agent had notice.  The general rule is that notice to an agent, to be binding on, and constitute constructive or implied notice to, the principal, must be of facts within the scope of the agency, or of or concerning business engaged in by the agent by the authority of the principal.  1 Am. & Eng. Enc. (2d Ed.) 1146.  The taking of promissory notes in payment of premiums was not within the state agent's authority.  Had Little been in the habit of delivering policies, intrusted to him by defendant for delivery, upon the receipt of promissory notes in payment of the premiums, or had such a delivery been made in this case, a very different question would probably be presented.

2. We are also of the opinion that the transaction between plaintiff and Little, in so far as the promissory notes are concerned, on the evidence as presented in the record, was a personal one between them, and in no way binding on defendant, and that plaintiff never understood that he gave the notes in payment of the premium.  In his application for the policies he states to the company that the

premium has not been paid, though Little then held the notes he now claims were given in payment. If he had understood that the notes had been given in payment, he certainly would have made it known when Joyce tendered him the policies in March, 1895. But he never made such a claim until long after he had refused to receive the policies, and not until he learned that the notes had been negotiated by Little. On this subject Little, who was called as a witness by plaintiff, testified as follows:

"Q. The defendant in this case never got any benefit from those notes, did it? A. No, sir. Q. Whatever there was in it, you got individually? A. Yes, sir. Q. And they ran to you individually? A. Yes, sir. * *. * Q. This was between you and the doctor? A. This was between me and the doctor. Q. These notes were payable to you as an individual? A. Yes. Q. And you could negotiate them? A. Yes. Q. The company had nothing to do with that at all? A. Nothing with that transaction. Q. You got the money on them yourself? A. I did."

Both these parties evidently understood that the notes belonged to Little in his individual capacity, and that the company had no interest therein. They were due in one and two years, and plaintiff well knew and understood that Little must remit the money to the company within sixty days. Joyce may have conditioned the delivery of the policies upon payment of the premium when he tendered them to plaintiff, but it is not important whether he did or not. The record is silent as to any claim or pretense by plaintiff at that time that he had paid the premium, by these notes or otherwise. He said absolutely nothing about it. His refusal to accept the policies was put upon the ground that he then had all the insurance he could well carry, and "under the circumstances" he thought he would not take them. He gave the notes to Little for the purpose of being negotiated to raise the necessary money to pay the premium due on these policies,—intrusted them to Little for that purpose,—and Little betrayed the trust. Having so acted, plaintiff should not be permitted to shift the responsibility, and burden defendant with Little's dishonesty, for which it was in no way responsible. Herrick v. Mosher, 71 Minn. 270, 73 N. W. 964.

3. The court below erred in permitting plaintiff to give in evidence declarations and statements made to him by the state agent,

Joyce, concerning what Joyce knew of the custom of Little in taking notes in payment of premiums. Such declarations and statements were not made by Joyce in the course of his agency, were concerning past transactions, and were wholly incompetent and inadmissible. Statements and declarations of an agent not made in the course of any business of the principal being transacted by him, but wholly with reference to past transactions, are hearsay, and not binding on the principal. Rodes v. St. Anthony & Dak. Ele. Co., 49 Minn. 370, 52 N. W. 27; Mechem, Ag. § 714. For these reasons a new trial is granted.

Order reversed.

START, C. J.

I concur in the result on the ground that it was error for the trial court to admit in evidence the admissions of the state agent. I dissent, however, from so much of the decision of the court as in effect holds that the verdict was not sustained by the evidence. The question is not whether the agent, Little, had implied authority to accept the plaintiff's promissory notes for the first premium. The question is, did he have apparent or ostensible authority so to do? The evidence on this question was, in my judgment, such as to make it a question of fact for the jury.

On April 13, 1900, the following opinion was filed:

BROWN, J.

In denying respondent's application for a reargument, we deem it proper to add a word to what is said in the former opinion. As there stated, whether the defendant was bound by the act of Little in taking promissory notes in payment of premiums turned in the court below upon the question whether Little had implied authority to so act. If any other theory of the case was there presented or urged by counsel for plaintiff, the learned trial judge did not refer to it in his charge to the jury. But it is not important whether the plaintiff's theory be that Little had implied or apparent authority. The law remains the same. A distinction between implied and apparent authority is pointed out in Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061. Although there are features distinguishing, in a degree, implied from apparent au-

79 M.—4

thority, it is not necessary to refer to them here; and, as counsel for respondent now relies upon the contention that Little had apparent or "ostensible" authority, we turn our attention for a moment to examine that question.

To bind a principal for an unauthorized act of his agent, on the ground that a long course of dealing and conduct on the part of the agent created or established apparent authority in the agent to do the act sought to be enforced, it must be shown that the principal had notice of such conduct and course of dealing, and permitted or acquiesced therein, or that the course of dealing was of such a nature and character as to make it the duty of the principal, as a matter of law, to know of it. If the nature of the business or dealings of the agent be of this latter character, and the principal by his culpable negligence permits it to continue, he is estopped to deny the authority of the agent. This is illustrated in Columbia Mill Co. v. National Bank of Commerce, supra. But, if it be not of such character, then, to bind the principal on the theory of apparent authority, it must be shown that he knowingly permitted or sanctioned the conduct and course of dealing. 1 Am. & Eng. Enc. 965, 989, 999, and notes.

Little's conduct and course of dealing were not of such a character as to make it the duty of defendant to know thereof. The company had expressly forbidden him from taking anything but money in payment of premiums, and the very receipt upon which this action is founded so informed plaintiff. The only question with reference to this branch of the case, therefore, is, did the defendant have actual or constructive notice of such course of dealing? It is beyond controversy that it had no actual notice, and the case narrows down to the question whether notice to the state agent was notice to the company. Our statutes require foreign insurance companies doing business in this state to appoint a state agent, and provide that a company shall be bound by the acts of such agent within his apparent authority. Apparent authority in an agent is such as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing. 1 Am. & Eng. Enc. 989. It is a well-settled rule or principle of law that notice to an agent, to be binding on the principal, must be of facts within

the scope of the agency.  Pomeroy, in his work on Equity Juris-prudence, states the rule thus:

"Also, in pursuance of the fundamental doctrine of agency con-cerning the powers of agents, the notice given to or information ac-quired by the agent, in order to be operative upon the principal, must be within the scope of the agent's authority to bind the prin-cipal.  If an agent cannot bind his principal by acts beyond the limits of his authority, a notice beyond those limits is equally nugatory."  2 Pomeroy, Eq. Jur. § 668.

The same doctrine is laid down in Sandberg v. Palm, 53 Minn. 252, 54 N. W. 1109.  In that case it was held that, because an agent with authority to sell land could not bind his principal by an agreement to permit a third person to erect a building on the principal's land, notice to him that a building was being erected thereon was not no-tice to his principal.  See also Wharton, Ag. 178; Weisser's Admrs. v. Denison, 10 N. Y. 68; Brown v. Bankers, 30 Md. 39.  The rule is an inseparable part of the law of agency.  The statute above re-ferred to does not in any way change or modify it.  It simply pro-vides that the company appointing such an agent shall be bound by his acts within his apparent authority.  Unless it can be held, as a matter of law, that it is within the apparent authority of an agent appointed pursuant to this statute to violate his express instructions and go beyond his express authority, notice to the state agent in this case of Little's conduct did not constitute notice to the defend-ant company.  Authority in an agent to do an act, whether apparent or implied, cannot be derived from a violation of his authority.  The state agent had no authority to bind the defendant company by taking promissory notes in payment of premiums, nor had he any au-thority to authorize Little to do so. . Anything of this kind was not only not within the scope of the agency, but in direct violation of the authority with which he was clothed.  We cannot, therefore, hold that notice to the state agent was notice to the company, without violating this fundamental rule of the law of agency.

The case of Godfrey v. New York Life Ins. Co., 70 Minn. 224, 73 N. W. 1, has no application.  Counsel for respondent did not cite it in his original brief,—presumably, for the reason that it is not in point.  We did not refer to it in our former opinion for the same reason.  The decision in that case was put squarely upon the

ground, not only that the state agent had notice that a subagent was in the habit of taking promissory notes in payment of premiums, but that the company itself had notice thereof, and had received some of the notes so taken. Whatever may have been the state of the evidence in that case, the decision was distinctly put on those grounds. And unless this court was guilty of an intentional play with words, which we do not believe, the court understood the evidence to establish those facts.

Application denied.

COLLINS, J. (dissenting).

Counsel for plaintiff petitions for a rehearing, specifying thirteen distinct grounds therefor. I think that on one of these, at least, the petition should be granted, but a majority of the four justices who agreed on the opinion as originally filed do not take this view. As required by the insurance code (Laws 1895, c. 175, § 76), the defendant, a foreign insurance company, had appointed a state agent, and a certificate of such appointment had been duly filed. It clearly appeared from the evidence that the state agent knew that Little, the solicitor, made a practice of taking promissory notes on account of premiums, and, further, that this practice had been sanctioned by such agent. In fact, there was testimony which would have justified a finding that the state agent himself did not hesitate to disregard instructions on this point, and to take notes for first premiums. By express enactment, the acts of a state agent are made binding upon the company he represents, when they are within his apparent authority as its accredited agent. Id. c. 175, § 89. But our attention was not called to this statute on the original argument. This statutory rule should be closely followed, if we are to properly protect such of our citizens as have to deal with these foreign corporations, engaged in the business of fire and accident, as well as life, insurance within our borders. So on the proofs at the trial the case was not one of implied, but of apparent, authority. Nor was our attention directed to the quite recent case of Godfrey v. New York Life Ins. Co., 70 Minn. 224, 73 N. W. 1, wherein the acts of an insurance solicitor, who had, in direct disobedience of his instructions, but with the knowledge of the state agent, accepted promissory notes for first premiums, were considered. I am unable

to reconcile the views therein expressed with what has been said in the original opinion herein.