# DISPATCH PRINTING COMPANY v. NATIONAL BANK OF COMMERCE.[1]

### July 7, 1911.

### Nos. 17,082—(138).

**Apparent authority of agent to indorse checks payable to principal.**

Apparent authority in an agent to represent his principal exists when the principal permits the agent to exercise powers not expressly granted. But such apparent power is to be determined, not by the acts of the agent, but by the acts of the principal. And it must appear that they were relied and acted upon in good faith, to justify a third party in dealing with the agent. *Held,* the evidence was not sufficient to justify the defendant in accepting the indorsements by plaintiff's agent of checks made payable to its order and presented for payment by him.

**Same — evidence of culpable negligence.**

The evidence was not sufficient to establish culpable negligence on the part of the plaintiff in not discovering and prohibiting the occasional practice of indorsing and collecting its checks by its agent, who was expressly forbidden from so doing.

Action in the district court of Ramsey county to recover $3,-246.88. After the former appeal, reported in 109 Minn. 440, the case was tried again before Simpson, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed, with directions to enter judgment in favor of plaintiff for $3,078.03 and interest.

1 Reported in 132 N. W. 2.

---

[Note] For liability of principal on negotiable paper executed by agent, including question of indorsements by agent, see note in 21 L.R.A.(N.S.) 1046.

*Durment, Moore & Sanborn,* for appellant.
*Charles G. Laybourn,* for respondent.

LEWIS, J.

On the former appeal (109 Minn. 440, 124 N. W. 236) a new trial was granted for errors in charging the jury. At the second trial the facts were practically the same as at the first, and it now becomes necessary to consider the evidence, and determine whether plaintiff was not entitled to judgment notwithstanding the verdict. The learned trial court submitted the question of apparent authority and of authority by estoppel to the jury, and instructed them that there was no evidence of express or implied authority.

Sturm was placed in charge of the Minneapolis department of the Dispatch Printing Company in 1901, with authority to collect in cash or by check payable to the order of the company. He was expressly forbidden to indorse checks, and was required to send them to the office at St. Paul. On one occasion, soon after the beginning of his service, it was discovered that he had indorsed and collected one small check. When reprimanded, he claimed not to have so understood his instructions, and promised not to do so again; and there is no direct evidence that plaintiff had knowledge that he had disobeyed his instructions until after Sturm's death. Defendant insists that the method followed by Sturm in his conduct of the business was sufficient to advise plaintiff that he was indorsing checks.

During 1893–1895 several large business houses of Minneapolis, patrons of plaintiff, paid their accounts by check, which were generally forwarded by Sturm to the St. Paul office; but it was shown that eight or ten of them had been indorsed by him and deposited to his account. During these years he kept several different accounts at different banks in Minneapolis, and sent to plaintiff his checks drawn on these banks to cover collections which he had made. These were supposed to represent cash collections, as testified by plaintiff's cashier, and no inquiry was made by plaintiff whether any of the accounts collected had been paid by check and indorsed by Sturm.

In some instances the accounts had been paid by plaintiff's patrons in checks on Minneapolis banks.

This process will be illustrated by reference to Exhibits 1 and 242. Exhibit 1 was a check of $1,546.50, drawn by Sturm on the Hennepin County Savings Bank, dated January 13, 1903, to the order of plaintiff. It was sent to plaintiff with a statement showing that it was to be credited to thirty-two different patrons. The amounts of the credits were generally less than $50; but one was $523.25, one $313.52, another $101.78, and two about $80. The argument is that plaintiff must have known that their patrons would not pay such large accounts in cash, and therefore must have known that Sturm was receiving checks, indorsing them, and depositing the amounts in his own name, and that he was permitted to follow this practice, although contrary to his positive instructions.

Another line of evidence relied on by defendant to establish apparent authority in Sturm to collect by check, and indorse and receive payment, is the method of keeping accounts. Sturm solicited the business from advertisers, sent copy to plaintiff, and bills were made out and sent, not direct to the customer, but to him. Having appropriated money from time to time, it became necessary for him to make up new statements of account, which would not show any balance carried forward. He secured the proper blanks, and used a stencil requesting that checks be sent to Room 3, Tribune Building, Minneapolis. On one occasion the stamped notice was, "Make checks payable to M. A. Sturm, Mgr., and mail checks to Room 3, Tribune Building, Minneapolis," and the patron made its checks accordingly. Another received a statement with this stamp on it, but refused to comply. There was no other evidence of its use, and no knowledge of it on the part of plaintiff; but it is asserted that it might have been ascertained, if plaintiff had been reasonably vigilant. It is further urged that plaintiff must have known that Sturm was indorsing checks and keeping money back, from the fact that large balances were carried forward in the accounts of some of the customers, and that such knowledge is shown by the correspondence conducted between him and plaintiff.

Defendant lays stress on a letter of date November 5, 1904, writ-

ten by plaintiff's manager, Mr. Hornick.   It will show plaintiff's attitude towards Sturm, as well as any other communication sent him, notwithstanding that portion of it particularly pointed out as indicating suspicion that Sturm was crooked.   The letter is as follows:
"Dear Max:

"When will you be over in St. Paul?   I want to see you regarding unpaid accounts, and, Max, we must strike a balance on this, because there would seem to be something wrong when our accounts in Minneapolis run along uncollected so far behind the average of our St. Paul accounts.   Honestly I can see no possible excuse for such accounts as Coe Commission Co. and International Live Stock Co. running so far behind, and something must be done with them.   Please let me know when you are coming over, and if you do not come soon I will have to spend a day with you in Minneapolis, and see if I can help you make the collections.   Please do not put off this matter."

August 15, 1904, Sturm had received a list of the past-due accounts, and on the eighteenth of October Mr. Hornick had written Sturm concerning these and other accounts, and called attention to the fact that they were getting old, and urged him to push collections.   The letter of November 5, as well as all other letters, show that the general manager believed that Sturm was negligent in making collections; but there is nothing in them to indicate that a suspicion was entertained that he was appropriating money secured by indorsing checks payable to the order of plaintiff, nor that he was short in remittances legitimately collected.   Sturm was not permitted to deduct his commission of fifteen per cent. out of money on hand.   He was required to collect and remit, and checks were sent to him from St. Paul to pay his account.   He was not prohibited from receiving checks payable to his own order, but customers apparently refused to follow his suggestion so to do.

There is another item of evidence, not introduced at the first trial, which may be noticed.   A clerk in the Northwestern National Bank of Minneapolis testified that on the fifth of January, 1905, Sturm presented, in payment of his personal account, a check of $100, payable to the order of plaintiff, which had been indorsed;

that he, the clerk, called up the plaintiff by 'phone, asked for some one in charge, and asked "if that was all right," and that the answer came that it was.   Assuming that the party who answered was one speaking with authority, the question was not directed to Sturm's authority to indorse the name of the plaintiff on the check.   The check might have been considered all right by the party speaking; his particular attention not having been called to Sturm's authority to make such indorsements.

As defined on the former appeal, apparent authority of an agent is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing.   This is a terse statement of the law from the standpoint of the principal, but does not include a statement of the necessary attitude of the party dealing with the agent.   We are of the opinion that the facts proven in this case do not bring the plaintiff within the rule.

Plaintiff encouraged the agent to push the advertising business in Minneapolis, and trusted him to make collections; but its entire conduct was consistent with its instructions that he should not indorse its checks.   He was urged to crowd collections, and not let the accounts of customers get so far behind; but all this is explained by the apparent neglect of Sturm to get in the money, and was consistent with a belief in his honesty.   The occasional settlement of balances by his personal check, and the statements showing that some customers had paid large amounts, was not sufficient to charge plaintiff with knowledge that Sturm had received checks payable to plaintiff's order and then indorsed them and collected the money. Plaintiff had no knowledge that defendant ever recognized such indorsements, and the limited extent to which it was resorted explains how easily plaintiff was kept in ignorance.

Of the many cases referred to in support of defendant's claim that plaintiff's conduct made a case for the jury on the question of apparent agency, not one bears the least resemblance as to the facts.   In Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061, it had been the practice for two or three years for the Mill Company to deposit in the bank checks indorsed

115 M.—11.

with a rubber stamp only. The bookkeeper, Heilpern, continued the practice for five months, and during that time appropriated the proceeds of nineteen checks. The bank relied on the authority thus made apparent, although no authority to indorse checks was expressly given. Best v. Krey, 83 Minn. 32, 85 N. W. 822, was submitted to the jury on the question of implied authority, and the facts were entirely different. Johnson v. Ogren, 102 Minn. 8, 112 N. W. 894, Eggleston v. Advance Thresher Co. 96 Minn. 241, 104 N. W. 891, Wheeler v. Benton, 67 Minn. 293, 69 N. W. 927, and Jackson v. Mutual Benefit Life Ins. Co. 79 Minn. 43, 81 N. W. 545, 82 N. W. 366, cited on the question of apparent authority, have been examined, but require no comment.

But the doctrine of apparent agency is not limited to the conduct of the principal. The authority must have been actually apparent to the party dealing with the agent. The apparent power of the agent is to be determined by the acts of the principal and not by the acts of the agent. Wierman v. Bay City, 142 Mich. 422, 106 N. W. 75. All of the elements of estoppel must be present. There must be conduct calculated to mislead, and it must be under circumstances which justified the claim that the principal should have expected that the representations would be relied and acted upon, and it must appear that they were relied and acted upon in good faith, to the injury of the innocent party. Clark v. Dillman, 108 Mich. 625, 627, 66 N. W. 570.

Noting the distinction between implied agency and apparent agency, it is stated in 31 Cyc. p. 1219: "An agent by implied appointment is a real agent, with all his rights and liabilities; an apparent agent, an agent by estoppel, is no agent at all." Chief Justice Gilfillan referred to the doctrine as follows: "The rule as to apparent authority rests essentially on the doctrine of estoppel. The rule is that, where one has reasonably and in good faith been led to believe from the appearance of authority which a principal permits his agent to have, and because of such belief has in good faith dealt with the agent, the principal will not be allowed to deny the agency, to the prejudice of the one so dealing." Columbia Mill Co. v. National Bank of Commerce, supra.

Indeed, defendant does not dispute the soundness of these legal propositions, but earnestly claims that it was misled by plaintiff's conduct.

For the purpose of considering the question from the standpoint of the defendant, let it be conceded that plaintiff was negligent in permitting Sturm to get behind with his collections, and that the size of his checks in certain settlements of account was sufficient to put plaintiff on notice that he was collecting by check, instead of cash, and that the method of transacting business was sufficient to create a suspicion that he was indorsing the checks of the company and collecting them, and that these facts were sufficient to establish apparent agency so far as plaintiff's conduct is concerned, yet all these things did not endow Sturm with any other powers than were expressly given. Plaintiff was not barred by the acts of Sturm in exceeding his express authority, unless it appears from satisfactory evidence that defendant dealt with him in good faith, in reliance on the attitude which plaintiff assumed towards him. Defendant knew that Sturm represented plaintiff in some capacity in Minneapolis. The fact that he had authority to solicit advertisements and collect in cash did not warrant the inference that he was intrusted with the power to indorse checks. When he presented himself at defendant's bank, and tendered plaintiff's checks, purporting to have been indorsed by him, it was required to ascertain whether he possessed such authority. No inquiry was made, and so far as the record shows defendant assumed it without inquiry. It does not appear that defendant had been informed of his delinquencies, or of plaintiff's suspicions, if any were entertained. On eight or ten occasions, while he carried an account in defendant bank, Sturm had presented for deposit a check to the order of plaintiff, indorsed by him. No question had ever been raised by defendant, and plaintiff was ignorant that credit was given to such indorsements.

There is no evidence of culpable negligence on the part of plaintiff, and the doctrine of estoppel by conduct, as distinguished from apparent agency, need not be considered. The evidence is conclusive that plaintiff did not knowingly permit its Minneapolis representative to exercise authority to indorse and collect the checks pay-

able to its order, and that defendant was not a good-faith purchaser of the checks involved in this action.

There is no dispute as to the amount, if plaintiff is entitled to recover, and it is therefore ordered that the order appealed from be reversed, and that judgment be entered in favor of the plaintiff for the amount claimed in the complaint.

SIMPSON, J., took no part.

On July 21, 1911, the following opinion was filed:

PER CURIAM.

On application for reargument our attention is called to the fact that the plaintiff admitted at the trial that certain credits should be allowed, and that the amount due at the time of the trial was $3,078.03.

It is ordered that the order for judgment be modified to read: The order appealed from is reversed, and judgment is ordered in favor of the plaintiff for the sum of $3,078.03, together with interest thereon at the rate of six per cent. per annum from the tenth day of June, 1910.

Application for reargument denied.