JOHN K. SARTWELL *vs.* WILLIAM FROST & another.

Suffolk.	Nov. 25, 1876. — March 5, 1877.	COLT & ENDICOTT, JJ., absent.

A., who had purchased the bankrupt stock in trade of B., made an agreement with him in writing, by which B. was " to do business " at the same shop as " agent for " A., authorizing B. " to sell the goods now in stock and buy other goods in order to keep the stock good with the money received, but not to buy on credit without an order in writing " from A., and providing that " if at any time the business is not carried on to the satisfaction " of A., " the store and fixtures, together with all goods in the store and the books and accounts, shall be turned over with the keys of the store to the said " A.    B. without an order in writing from A. purchased certain goods on credit of the plaintiff, who was in ignorance of B.'s relation to A., all of which goods went into the stock of the store to the use and benefit of A. Soon after, A. took possession of all the goods in the shop, including such of those sold by the plaintiff as remained in the stock, and sold them as his own.   *Held,* in an action against A. to recover for the goods sold by the plaintiff to B., that the agreement made B. the agent of A. to carry on the shop ; that A. by taking and selling a part of the goods, had ratified the act of B. in purchasing on credit without his order ; and that the action would lie.

CONTRACT on an account annexed for goods sold and delivered. Trial in the Superior Court, without a jury, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows :

The goods set forth in the plaintiff's account were sold and delivered to the firm of J. E. Abbott & Brother, who from July 21, 1874, to February 10, 1875, carried on a produce business at a shop, No. 110 Pleasant Street, Boston, which bore on the outside a sign, " J. E. Abbott & Brother." Their business card also bore the same name. The goods were sold and delivered after July 21, 1874, on a credit of thirty days, on the credit of J. E. Abbott & Brother exclusively, and were charged to them

in the books of account of the plaintiff. In the summer of 1874 the firm of J. E. Abbott & Brother became bankrupt, and the defendants whose business was that of truckmen exclusively, bought of the assignee in bankruptcy, for the sum of $1,216.37, the stock of goods and fixtures in the store, 110 Pleasant Street. Thereupon, on July 21, 1874, the defendants and J. E. Abbott & Brother entered into the following contract in writing: " July 21, 1874. It is agreed between the subscribers that Jas. E. Abbott and Moses K. Abbott of Boston, are to do business at 110 Pleasant Street, Boston, as agents for Wm. Frost and T. P. Frost of Boston. They are authorized to sell the goods now in store, and buy other goods in order to keep the stock good with the money received, but not to buy on credit without an order in writing from Wm. Frost or T. P. Frost. It is further agreed that if at any time the business is not carried on to the satisfaction of Wm. Frost and T. P. Frost, the store and fixtures, together with all goods in the store and the books and accounts, shall be turned over with the keys of the store to the said Frosts or either of them, on demand of the same; to be by them held or disposed of for the payment of the money paid for the same, and interest at seven per cent. per annum, and any necessary expense or cost of disposing of the same. It is also agreed that whenever the said Abbotts shall pay to the said Frosts the sum or sums paid out for or on account of said store and goods, with interest at seven per cent. per annum, and agree to hold them harmless from further costs, then the store and goods shall be given up to the said Abbotts without reserve."

Abbott & Brother carried on business under this contract, selling the stock in the shop for cash and on credit, and renewing the stock by purchases of the plaintiff and other persons; and, thus selling and buying more or less on credit, used the money collected by them upon sales for cash or on credit, to pay the expenses of the business, and to pay for the goods put into the stock, purchased for cash or on credit.

The defendant William Frost, between July 12, 1874, and February 10, 1875, at least every week, visited the shop of J. E. Abbott & Brother, examined their stock, inquired into their business transactions and examined their books of account, upon which appeared their expenditures and sales on credit, but on

which appeared no entries of their purchases on credit. But William Frost, about November 1, 1874, discovered unpaid bills of the plaintiff and others, which had been presented to J. E. Abbott & Brother, and which they had contracted in purchases of goods for credit. Thereupon William Frost declared that J. E. Abbott & Brother had violated their contract with him by purchasing goods on credit, and, after ascertaining their whole indebtedness for goods purchased on credit, and the whole indebtedness to them for goods sold on credit, insisted upon immediate payment of the former indebtedness, threatening at the same time if purchases on credit were repeated to take possession of the shop and its stock under the contract. J. E. Abbott & Brother excused their conduct in their buying and selling on credit, on the ground that the business could not be profitably conducted otherwise, and this was found by the court to be the fact. J. E. Abbott & Brother proceeded to pay the bills for goods purchased by them on credit, as required by William Frost, but subsequently purchased of the plaintiff and others goods on credit, which entered into the stock, without the knowledge of William Frost, but within the means of his knowledge by reasonably diligent inquiry. This fact, discovered by William Frost, on or about February 1, 1875, together with a disagreement with James E. Abbott, and the disinclination of Moses K. Abbott to prosecute the business any longer, induced him and them, on February 10, 1875, to make the arrangement expressed in the following writing, signed by James E. Abbott and Moses K. Abbott: " We hereby turn over to the within named Wm. Frost and Thos. P. Frost the store and fixtures within named, together with all goods in said store, and the books and accounts within named, together with the keys of said store, (they having made demand on us for the same,) to be held or disposed of by them according to the terms of the within agreement."

Until this arrangement was consummated, neither James E. Abbott nor Moses K. Abbott disclosed to the plaintiff their agency for the defendants, nor any relation between them and the defendants in conducting the business of the shop; nor had the plaintiff any knowledge or cause of suspicion of such agency or relation, unless it can be justly inferred from the facts only

that they knew of the bankruptcy of J. E. Abbott & Brother, immediately prior to July, 1874, and were their creditors in such bankruptcy, and intended, in their subsequent transactions with them to sell them no goods until any previous indebtedness for goods had been discharged. The defendants, from sales of the stock and collections for goods, sold on credit from said shop, received after February 10, 1875, the sum of $1,775. Of the stock so sold was a portion of the goods bought of the plaintiff not exceeding in value $20.

Upon the foregoing facts found, the judge ruled that this action could be maintained and ordered judgment for the plaintiff. The defendants alleged exceptions.

*R. Lund*, for the defendants.

*H. G. Hutchins*, for the plaintiff.

MORTON, J. By the agreement of July 21, 1874, James E. Abbott and Moses K. Abbott were constituted the agents of William Frost and Thomas P. Frost for the purpose of carrying on the shop in Pleasant Street. It provides that the Abbotts " are to do business at 110 Pleasant Street, Boston, as agents for Wm. Frost and T. P. Frost of Boston. They are authorized to sell the goods now in store and buy other goods in order to keep the stock good with the money received, but not to buy on credit without an order in writing from Wm. Frost or T. P. Frost." At the time the agreement was executed, the Frosts were the owners of the goods in said store. The Abbotts could not sell them unless they received authority from the Frosts to do so. The clear purpose of the parties was, that the Abbotts should carry on the business, should sell the old stock and purchase new from time to time, to replace that sold, and that the whole stock, both old and new, should be the property of the Frosts, so as to secure them for the money they had paid for the stock and incidental expenses. To hold, as contended by the defendants, that the transaction was a conditional sale of the stock to the Abbotts, would defeat this purpose, as the Frosts would have no title to the new goods purchased by the Abbotts, and thus their security would be constantly diminishing as the old stock was sold. The language of the agreement, which we have above cited, is appropriate to create an agency, and its other provisions are consistent with this construction.

Considering this as a contract of agency, it is clear that the general scope of the agency was the carrying on of the business in the store previously occupied by the Abbotts.

The goods purchased by them from time to time, and put into the store as part of the stock, became the property of the Frosts, whether bought for cash or on credit. The agreement expressly provides that " if at any time the business is not carried on to the satisfaction of Wm. Frost and T. P. Frost, the store and fixtures, together with all goods in the store and the books and ac·· counts, shall be turned over with the keys of the store to the said Frosts." The argument of the defendants that the Abbotts could, under the agreement, purchase, upon their own credit, goods to be used in the business, which would be their property, is inconsistent with this provision and with the whole scope of the transaction.

The parties acted upon the construction we have adopted, for, in fact, soon after the plaintiff's debt was contracted, the Frosts took possession of all the goods in the store, including such of those sold by the plaintiff as remained in the stock. The plaintiff sold the goods in question to the Abbotts in ignorance of their relation to the Frosts. It is a well settled rule that in such a case, the seller may resort to the principal when discovered by him., *Raymond* v. *Crown & Eagle Mills*, 2 Met. 319.

But the defendants contend that the rule does not apply to this case, because the contract of agency contained the stipulation that the agents were not to buy on credit, and therefore they were not acting within their authority when they bought the goods of the plaintiff. It is a sufficient answer to this claim, that, upon the evidence at the trial, the court may have found that the defendants ratified the acts of their agents, so far as they exceeded their authority.

It appeared that all the goods bought went into the stock of the store to the use and benefit of the defendants, and that they took possession of a part of them and sold them as their own. They cannot thus avail themselves of the contract of their agent so far as it is for their benefit, and reject the rest; but by retaining and claiming the goods, in whole or in part, as their property, they must be held to have ratified the acts of their

agents, in excess of the instructions given them. *Draper* **v.** *Charter Oak Ins. Co.* 2 Allen, 569. The rulings in the court below were, therefore, correct. *Exceptions overruled.*