MASSACHUSETTS BREWERIES COMPANY *vs.* GEORGE E. HILLS, trustee.

Suffolk.    November 16, 1903. — May 18, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Agency.    Assignment.*

An assignment by a liquor dealer of his business and stock in trade to a trustee, to secure the assignor's indebtedness to certain brewing companies which have advanced money to pay for his licenses and certain other indebtedness, the assignor covenanting that he will give his whole time and attention to carrying on his business carefully and economically under the trustee's direction, will pay for all purchases in cash as far as possible, will keep accurate books of account, and will account to the trustee at least once a week for all moneys received or paid out by him less a salary of $25 a week, with a power of sale in the trustee upon his being satisfied that the assignor is losing money in his business or on a breach of covenant by him, does not make the assignor the agent for the trustee in carrying on the liquor business, and one who has sold beer and ale to the assignor for use in that business cannot sue the trustee for the price.

CONTRACT for $909.75 for beer and ale sold to the defendant. Writ dated January 15, 1903.

The defendant in his answer set up an assignment dated May 14, 1900, from one Frank Marotta to G. Caspar Niles as trustee and an assignment dated November 15, 1900, from Niles as trustee to the defendant as trustee. The defendant also filed a declaration in set-off for $353 for money alleged to have been paid under a mistake of fact and interest from May 19, 1900.

In the Superior Court the case was heard by *Mason*, C. J., upon an agreed statement of facts. He ordered judgment for the defendant on the plaintiff's declaration, and ordered judgment for the plaintiff on the defendant's declaration in set-off. The plaintiff appealed. The material facts are stated in the opinion.

The instruments of assignment and of acceptance thereof were as follows :

" Whereas Frank Marotta is carrying on the business of licensed liquor dealer at 176 and 178 North street and 133 to 137 Richmond street, in the city of Boston, under the name and style of Frank Marotta & Company, and licenses for the year beginning May 1, 1900, have been granted by the Board of Police Commissioners of the city of Boston to said Frank Marotta and Frederick Stucke, under the firm name and style of Frank Marotta & Company, but said Frederick Stucke has no interest in said business or said licenses.

" And whereas said Marotta has no funds with which to pay the necessary fees for said liquor licenses, but on the contrary, is largely indebted to the American Brewing Company, the Roessle Brewery, Continental Brewing Company, Casper Berry and a large number of other corporations or individuals, an approximate list of which, with the amounts due each, is hereto annexed.

" And whereas the stock in trade, furniture, fixtures, and other personal property in said Marotta's place of business is subject to a mortgage for fifteen hundred (1500) dollars to one of his creditors, and some of the notes held by other creditors are indorsed by his wife, Angelina Marotta, which mortgage and indorsements said creditors are unwilling to give up.

" And whereas it appears to be for the interest of said Marotta and of all the creditors that said license fees shall be paid, and said business continued, and on this account said three brewing companies are willing to advance the funds necessary to pay the fees for such licenses, provided said Marotta will hereafter conduct his business in an orderly and economical manner, subject to the directions of the trustee hereinafter named, and as far as possible upon a cash basis, paying the net proceeds and accounting weekly to G. Caspar Niles, as receiver or trustee, and provided also that said Marotta will secure them for such advances by a conveyance of all his right, title and interest in said licenses, and of all his equities and by a conveyance by his wife of all her equities in any real estate to said Niles, all to be held by said Niles upon the trusts hereinafter set forth.

" Now therefore know all men by these presents, that I, the said Frank Marotta, in consideration of the premises and of one dollar to me in hand paid, the receipt of which is hereby acknowledged, do hereby sell and convey all the furniture, fixtures, stock in trade and all the personal property now on the premises above described on North and Richmond streets, subject to the existing mortgage for fifteen hundred (1500) dollars, also all my right, title, and interest in and to said licenses when they shall have issued, and in and to any and all liquor licenses that shall be granted to me, either alone or with others in succession thereto, and also the good will of my said liquor business and leases to said G. Caspar Niles as collateral security for the payment of my debts in the order hereinafter named, and the performance by me of the covenants hereinafter contained to be by me performed.

" The proceeds of said collateral security and also all other funds coming into the hands of the trustee are to be applied in the following order, viz. : —

" First. To the payment of the interest on said mortgage for fifteen hundred (1500) dollars, and on the mortgages on the real estate of my said wife, and the taxes and other necessary charges, and the reasonable compensation of the trustee.

" Second. To the repayment of all cash advanced by said three brewing companies to pay for any licenses.

" Third. To the payment or to the proportionate reduction

of the note secured by said mortgage for fifteen hundred (1500) dollars, and all notes endorsed by my said wife.

" Fourth.  To the payment or proportionate reduction of all my other debts.

" And I hereby authorize and empower said Niles, or his successor in this trust, or assigns, to sell at public auction or private sale and without notice to me, all my said personal property, good will, stock in trade, and licenses upon becoming satisfied that I am losing money in my business, or upon my making a breach of any of the covenants hereinafter contained to be by me performed, or at the written request of two thirds of my creditors representing more than one half of my indebtedness, and to apply the proceeds to the payment of my debts in the order above named.

" And I, the said Marotta, further covenant and agree with said Niles, trustee as aforesaid, and his successor in said trust and assigns, that I will from this date give my whole time and attention and best efforts to carrying on my said business carefully and economically under his direction, paying for all purchases in cash as far as possible, and will keep or cause to be kept accurate books of account showing my receipts and disbursements, and that I will, at least once in each week, account to said Niles for all monies received or paid out by me, and will then turn over to him all the balance of net receipts, and will retain for myself a salary not exceeding twenty-five dollars a week.   This trust shall not continue in any event for more than five years, at the expiration of which time said property shall be reconveyed to said Marotta, or his personal representatives, if his indebtedness shall not then exceed five thousand (5000) dollars, otherwise a sale shall be had for the benefit of the creditors in the order above named.

" Witness my hand and seal this 14th day of May, A. D. 1900.

" Frank Marotta."    [Seal.]

" I, the said G. Caspar Niles, hereby accept the above conveyance and the trusts therein contained with the express understanding and agreement that I may retire from said position at any time by assigning all of the above property upon the same trusts to some suitable person, and the acceptance of said trusts by such person, and that I am not to be held personally liable

for any of my acts done under the above assignment except for wilful default or neglect.        G. Caspar Niles." [Seal.]

"Know all men by these presents, that I, G. Caspar Niles of Boston, in the County of Suffolk and Commonwealth of Massachusetts, the mortgagee and trustee under a certain mortgage and trust deed of personal property given by Frank Marotta to me, dated May 14th, A. D. 1900, and recorded on the records of the City of Boston with the records of mortgages of personal property, book 963, page 276, in consideration of one dollar and other valuable considerations paid by George E. Hills of said Boston, the receipt whereof is hereby acknowledged, do hereby assign, transfer and set over unto the said George E. Hills, the said mortgage and trust deed and claim thereby secured, and all my right, title and interest in the personal property thereby conveyed subject to the trusts therein set forth.

"In witness whereof, I hereunto set my hand and seal this fifteenth day of November, A. D. 1900.

"G. Caspar Niles." [Seal.]

"I, the said George E. Hills, hereby accept the above conveyance and the trusts therein referred to with the express understanding and agreement that I may retire from said position at any time by assigning all the said trust property upon the said trusts to some suitable person, and the acceptance of said trusts by such person, and that I am not to be held personally liable for any of my acts done under the above assignment except for wilful default or neglect.

"George E. Hills." [Seal.]

"City of Boston, November 16, 1900, 4 & 46 min. P. M.   Rec'd & ent'd in records of mortgages, libro 978, folio 239.

"per John T. Priest, Ass't City Clerk."

The mortgage note and mortgage for $1,500 referred to in the instrument, dated May 14, 1900, had been cancelled and discharged by the payment to the Massachusetts Breweries Company of $600.

*G. F. Ordway*, for the plaintiff.

*G. E. Hills*, trustee, *pro se*.

MORTON, J.   This is an action to recover for beer and ale alleged to have been sold by the plaintiff to the defendant. The defendant filed a declaration in set-off.   The case was heard

in the Superior Court upon agreed facts, and the judge found for the defendant on the plaintiff's declaration, and for the plaintiff on the declaration in set-off.   The plaintiff appealed.

From the agreed facts it appears that one Marotta and one Stucke were carrying on the business of licensed liquor dealers in Boston under the style of Frank Marotta and Company under licenses granted by the police commissioners of Boston. Stucke had no interest in the licenses or the business, but was an employee of the American Brewing Company till that company with others was consolidated into the Massachusetts Breweries Company when he became an employee of the Breweries Company.   In May, 1900, Marotta was largely indebted to various persons, firms and corporations including the American Brewing Company, the Roessle Brewery, and the Continental Brewing Company, and was unable to pay for the licenses which were granted to the firm of Frank Marotta and Company for the year beginning May 1, 1900.   Thereupon the three companies expressed a willingness to advance the funds necessary to pay for the licenses upon being secured therefor, and the sealed instrument of May 14, 1900, was accordingly executed and delivered by Marotta to Niles, and the companies advanced the funds necessary to pay for the licenses.   Niles accepted the conveyance and the trusts therein contained upon the express agreement that he could retire at any time by assigning the property upon the same trusts to some suitable person, and the acceptance of the trusts by such person, and that he should not be personally liable for any of his acts done under the conveyance except for wilful default or neglect.   On November 15, 1900, Niles executed to the defendant an instrument by which the defendant succeeded to all the right, title and interest of Niles in the premises.   The defendant accepted the conveyance and the trusts therein referred to upon the same terms and conditions as Niles had accepted them.   The plaintiff contends that the effect of these conveyances was to constitute Marotta the agent of the defendant, and to make the defendant personally liable for the goods bought by Marotta in carrying on the business after the execution of the instrument of May 14, 1900. But it seems to us plain that the scope and effect of that instrument were to convey the property therein described to Niles

and his successor in the trust as collateral security for Marotta's debts including the sums advanced by the three brewing companies to pay for the licenses, and upon the trusts therein set forth, and to constitute Niles or his successor mortgagee and trustee and not the proprietor of the business. The business is spoken of throughout the instrument as Marotta's business, and he agrees to conduct it in an orderly and economical manner, subject to the directions of the trustee. He covenants with Niles and his successor that he will give his "whole time and attention and best efforts to carrying on my said business carefully and economically under his [the trustee's] direction," that he will pay for all purchases in cash as far as possible, that he will keep accurate books of account, and that he will account to said Niles at least once a week for all moneys received or paid out by him less a salary of $25 a week. It is manifest that the accounting is to be to Niles or his successor as trustee and not as the owner of the business ; — the provision as to salary being a prudent arrangement for all concerned. The conveyance is expressly declared to be " as collateral security for the payment of my debts in the order hereinafter named, and the performance by me of the covenants hereinafter contained to be by me performed." Then follows a statement of the order in which payment is to be made. The trustee or his successor is authorized " to sell at public auction or private sale and without notice to me, all my said personal property, good will, stock in trade, and licenses upon becoming satisfied that I am losing money in my business, or upon my making a breach of any of the covenants hereinafter contained to be by me performed," which is inconsistent with ownership on the part of the defendant or Niles. The whole tenor of the instrument is at variance with the view that Marotta was the defendant's agent, and so also, so far as appears, is the conduct of the parties. For aught that appears, Marotta bought and paid for the goods. Neither the defendant nor Niles so far as appears ever ordered any goods, or were consulted in the ordering of any, or paid any of the bills. There is nothing to show that the goods were charged to them, or that bills were made out to them, or that credit was given to any one except Marotta.

We see no ground on which it can be fairly contended that Marotta was the agent of the defendant or of Niles.

In the case of *Sartwell* v. *Frost*, 122 Mass. 184, it distinctly appeared that the defendants were carrying on the business, and that the purchasers of the goods were their agents.

*Judgment affirmed.*