## IDA JOHNSON v. JOHN OGREN.[1]

### July 12, 1907.

### Nos. 15,283—(207).

**Ratification of Agent's Unauthorized Act.**

Ratification by a principal of the unauthorized act of his agent must be, as a general rule, with full knowledge of all the facts of the transaction.

**Knowledge of Agent's Acts.**

He cannot be charged with such knowledge by his failure to inquire of others concerning the acts of his agent; for he may assume, until otherwise advised, that his agent will obey his instructions.

**Retention of Benefits.**

Where, however, the principal receives from his agent the proceeds of the unauthorized act, with a report or account of the transaction, he cannot ignorantly or purposely shut his eyes to means of information within his possession and control, and thereby avail himself of the benefits of the transaction, and then repudiate it. If he so receives and retains the benefits of ·the transaction, he ratifies it.

**Evidence.**

Upon the facts set forth in the opinion herein, it is *held* that the appellant's intestate ratified the unauthorized act of his agent in borrowing money which was used in his principal's business, and that a claim against his estate for the money is not barred by the statute of limitations.

The probate court for Washington county having allowed the claim of John Ogren against the estate of Alex Johnson, deceased, an appeal was taken to the district court for that county, and was tried before

[1]Reported in 112 N. W. 894.

Crosby, J., who made findings and ordered judgment against the estate in the sum of $1,357.44, with interest from April 11, 1900. From the judgment entered pursuant thereto, the administratrix of the estate appealed. Affirmed.

*Manwaring & Sullivan,* for appellant.

*F. V. Comfort,* for respondent.

START, C. J.

This is an appeal from the judgment of the district court of the county of Washington, affirming the judgment of the probate court of that county allowing the claim of the respondent for money had and received against the estate of Alex Johnson, deceased. The case was tried in the district court without a jury. Findings of fact were made by the trial judge, and as a conclusion of law judgment was directed in favor of the respondent for the sum of $1,357.44, with interest, and judgment was so entered.

The facts found were to the effect following:

1. Alex Johnson died intestate March 20, 1905, and on May 12 next thereafter his widow, the appellant herein, was duly appointed administratrix of his estate.

2. On February 26, 1896, Alex Johnson was doing a mercantile business at Stillwater under the name of the "Alex Johnson Store Account," which was conducted for him by his brother-in-law and agent, C. G. Ryden, who was authorized to buy and sell all goods connected therewith; but he had no authority to borrow money for use in the business, or to draw checks upon the bank in which Johnson kept his account in payment of indebtedness contracted in such business.

3. There was an arrangement between Johnson and Ryden that whenever Ryden should pay Johnson the amount of money that Johnson had invested in the business, he would transfer it to Ryden. Ryden never paid such amount, and the transfer was never made to him. Such arrangement was known to respondent, Ogren, at the time of his making the advancement hereinafter stated. On the 26th day of February, 1896, the respondent, Ogren, had some talk with Ryden about forming a copartnership with him in such business. He was then owing the Alex Johnson Store Account for goods purchased of it the sum of $36.44. Ryden at this time needed money for present use in

the business, but did not wish to apply to Johnson to furnish it, which fact Ogren then knew.

4. Ogren agreed to and did advance to Ryden the sum of $2,000 for the purpose of meeting bills, for which he gave to Ogren a receipt, of which the following is a copy:

Stillwater, Minn., Feb. 26th, 1896.

Received of John Ogren $2,000.00, to be drawed out, if he so desires, when he calls for them, or to apply to a share in the clothing store, now known as the Alex Johnson Store Account.

[Signed] C. G. Ryden.

Some time after the receipt was executed there were inserted therein by agreement of the parties the words, "or interest at the rate of 5 per cent. per annum." Ogren demanded from Ryden the payment of the $2,000 within one year after it was received by him.

5. Upon receiving this receipt Ogren gave to Ryden his check, payable to the order of the Alex Johnson ˏStore Account, for $1,963.56, which Ryden deposited in the Lumberman's National Bank, in the city of Stillwater, to the credit of the Alex Johnson Store Account, which thereafter, without the knowledge of Johnson, was used in his business and drawn from the bank upon checks signed by him and used in the payment of bills in connection with the business of the Alex Johnson Store Account, and Ogren was given credit upon the books of the Alex Johnson Store Account for his indebtedness of $36.44.

6. After the receipt was so made and delivered to Ogren, there was paid and indorsed thereon from time to time payments of interest and principal, which were made in part by goods purchased by Ogren from such store on credit. The last payment made and indorsed on the receipt was made on August 29, 1899, being "$175 interest, and cash $200." Part of such payment so indorsed was for goods theretofore purchased by Ogren, and part in cash from the sale of goods from the store. All of such payments were made and indorsed without the knowledge or consent of Johnson.

7. Johnson after August 29, 1899, and before April 11, 1900, sold and delivered to Ogren goods from the store managed by Ryden of the reasonable value of $442.56, which have not been indorsed upon

the receipt or applied in payment of the $2,000; but the amount thereof should be applied in part payment thereof. All of the transactions herein stated were duly entered upon the books of the Alex Johnson Store Account, and were at all times subject to the inspection of Alex Johnson. He never authorized such transactions by Ogren and Ryden, and never had any knowledge thereof, and never consented thereto; but, if he had exercised such care and oversight of his business as a person of ordinary prudence should or would have exercised, he would have had full and complete knowledge of every and all of such transactions.

While not so stated in the trial court's conclusion of law, yet a computation shows that the payments of the interest and principal of the $2,000 were allowed, and also the counterclaim for $442.56 was allowed and applied as a payment thereon or offset thereto; for the conclusion of law was a direction that judgment be entered in favor of the respondent, with interest from April 11, 1900, the date of the sale of goods of the value of $442.56 from the store managed by Ryden to respondent, Ogren.

The only question for our decision is whether this conclusion of law is justified by the facts found. The contention of the appellant is to the effect that it is not, for the reasons that the findings of fact do not show that Johnson was ever legally liable to Ogren for the $2,000 here in question, and, further, if it were otherwise, the facts show that the claim was barred by the statute of limitations at the time of Johnson's death. A determination of the merits of this contention involves a construction and analysis of the findings of fact.

The appellant, in support of the first contention, urges in effect that there was a contract between Johnson and Ryden, of which Ogren had knowledge, by the terms of which Johnson was bound to transfer the business to Ryden upon being paid the amount he had invested therein; that the right thus acquired by Ryden was assignable, and that there was an express contract between him and Ogren, based upon Ryden's contract with Johnson, whereby all rights that Ogren acquired should depend upon Ryden's interest as represented by his contract with Johnson; and, further, that the transaction whereby Ogren advanced $2,000 for the purpose of meeting the bills of the store was solely an express contract between Ryden, acting for himself, and Ogren.

Counsel for appellant seeks to apply to the facts as claimed by him

the undoubted rule that the law will not imply a promise where there is an express agreement covering the subject. The facts as found by the trial court do not support the premises of appellant's claim; hence the rule of law invoked is not here applicable.

The facts as found in this connection are to the effect that Ryden at one time had an option to purchase the business he was managing for Johnson, but he was not bound to exercise the option, never did, there was never any transfer of the business to him, and from first to last his relation thereto was that of agent and manager for Johnson, and, further, there was no agreement, express or implied, that Ogren should or might acquire any interest in the business. The finding is that "Ogren had some talk with Ryden about forming a partnership with him in such business." The concluding sentence of the receipt, "or to apply to a share in the clothing store now known as the Alex Johnson Store Account," implied at most only the right of Ogren so to apply the money advanced to the payment of his share in the business if perchance he should ever purchase it. The fact that Johnson's business name was the "Alex Johnson Store Account"; that Ogren advanced to Ryden $2,000, nearly all of it in a check payable to the order of Johnson by his business name, for the purpose of meeting the bills of his store business; that the money was deposited in his bank to his credit, and afterwards taken out of the bank upon checks personally signed by him and so used, but without his actual personal knowledge, was expressly found by the trial court. Again, it was found that Ryden was the agent and manager of Johnson, fully authorized to conduct the store business, to buy and sell goods connected therewith, and by implication authorized to do whatever was reasonably necessary to execute the objects of his agency; that is, to conduct a mercantile business for his principal. The only limitation upon his express or implied authority was that he had no authority to borrow money for the use of the business or to draw checks upon his principal's bank account in payment of indebtedness contracted in the business. This necessarily implies that debts would be contracted in the business, and that they might be paid by the agent in any manner, except as stated; for example, out of the proceeds of the sales of the goods purchased by the agent for the business. There is no finding that Ogren ever had any knowledge of this limitation upon the apparent general authority of

Ryden, or that Ogren was guilty of any wrong or bad faith in the premises. The mere fact that he knew that Ryden for some undisclosed reason did not wish to call on Johnson to furnish at that particular time the money needed in the business does not impeach Ogren's good faith. This case, then, is within the rule that if a party receives the money of another, which in equity and in good conscience he ought to pay over, the law implies a promise so to pay it, and an action for money had and received will lie for its recovery. Brand v. Williams, 29 Minn. 238, 13 N. W. 42.

The case of Eckart v. Roehm, 43 Minn. 271, 45 N. W. 443, relied upon by appellant, is not in point; for the facts of this case are essentially different than were the facts in the case cited. In that case the principal did not receive any benefits from the unauthorized act of his agent. The facts were that the principal furnished his agent with funds to pay the laborers on the principal's farm; but he kept the money for his own use, and without the authority, knowledge, or consent of the principal purchased clothing for the laborers from a third party, who was not justified in believing that the agent was authorized, and deducted the price of the clothing from the wages of the laborers. The court held upon such facts that the principal had not ratified the act of his agent and was not liable for the value of the clothing. Again, the facts in this case justify the conclusion that Johnson ratified the act of Ryden in procuring the money from Ogren, for he had the full benefit of it.

True it is, as claimed by counsel for appellant, that as a general rule ratification by a principal of the unauthorized act of his agent must be with full knowledge of all the material facts of the transaction. He cannot be charged with such knowledge by his failure to inquire of others concerning the acts of his agent; for he may assume, until otherwise advised, that his agent will obey his instructions. Where, however, the principal receives from his agent the proceeds of the unauthorized act, with his report or account of the transaction, he cannot ignorantly or purposely shut his eyes to means of information within his possession and control, and thereby avail himself of the benefits of the transaction, and then repudiate it. If he so receives and retains the benefits of the transaction, he ratifies it. 1 Am. & Eng. Enc. (2d Ed.) 1206; Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061; Landin v. Moorhead Nat. Bank, 74 Minn.

222, 77 N. W. 35; Combs v. Scott, 12 Allen, 493, 497; Sartwell v. Frost, 122 Mass. 184.

In the case of Landin v. Moorhead Nat. Bank, supra, the cashier of the bank, without the authority of the bank, shipped and sold a carload of wheat for the plaintiff in the name of the bank, and the proceeds of the sale were received by the bank, but by mistake it paid them to a party other than the plaintiff. The bank was held liable to the plaintiff for the money so received by it, for the reason, as stated by the court, that "shipping wheat for third parties is not within the ordinary duties of the cashier of a national bank, and there is no evidence that in this instance the cashier had any actual or apparent authority from the bank to engage in any such business; and hence the shipping and selling of the wheat for the plaintiff was the individual act of the cashier, for which the bank would not be liable. But, admitting all this, it is equally true that, if the bank received the proceeds of plaintiff's wheat, it must account to him for the money thus received." In the case at bar the principal not only received the money and had the full benefit thereof, but the whole transaction was entered in his account books, the money credited to his bank account, which he exclusively controlled, and he personally signed the checks whereby the money was drawn from the bank and used in paying his bills. It would be a gross miscarriage of justice to permit the principal, under such circumstances, to shut his eyes to the means of information in his possession and control, to say that his agent procured for him the money without his consent, knowledge, or authority, and to keep the money and repudiate the act of his agent whereby he secured the money for him. The record presents a clear case of ratification by the principal of the unauthorized act of his agent.

The appellant further contends that, if a cause of action existed against Johnson, it was barred by the statute of limitations before his death. It may be conceded that such would be the case if all payments made upon respondent's claim be rejected as unauthorized. The last payment was made and indorsed on the claim August 29, 1899, some four years before the expiration of the six-year limitation. It was made by Ryden, but appellant claims that it was not authorized by Johnson. It was made in money derived from the sale of goods from the store of Johnson, and by goods therefrom upon a debt of the Alex

Johnson Store Account; that is, when the act of Ryden in obtaining the money from Ogren for the store was ratified by Johnson, it became such a debt precisely as if the agent's act had been originally authorized. The only limitation on Ryden's authority to pay the debts of the store was, as we have stated, that he could not borrow money for that purpose, nor draw checks upon Johnson's bank account in payment of the indebtedness of the store. He could, however, pay such debts by goods from the store, or from the proceeds of the business of the store. We hold that the payment was authorized, and that respondent's claim is not barred by the statute of limitations.

Judgment affirmed.