CLEMENT THOMPSON v. NORTH STAR MUSKRAT FARM, INC.[1]

May 1, 1931.

No. 28,402.

*Keyes, Pardee & Solether,* for appellant.
*A. R. Burton* and *George A. Lewis,* for respondent.

STONE, J.

Plaintiff had a verdict for the amount of a commission claimed under a supposed express contract for the sale of defendant's real estate. The latter appeals from the order denying its alternative motion for judgment or a new trial.

Defendant is a Minnesota corporation. The property involved, formerly owned by it, is the Loon Lake Muskrat Ranch in Beltrami

[1]Reported in 236 N. W. 461.

county. It was sold to Randall Brothers by contract under date of June 20, 1929, for a price which, for present purposes, may be considered the equivalent of $18,000. The documentary foundation of plaintiff's claim is an informal written statement signed July 10, 1929, "North Star Muskrat Farms, Inc., by A. E. Witting, Vice Prest." reading as follows:

"This is to certify that Mr. Clement Thompson has coming to him, after the Loon lake deal to Randall Bros., is completed, the sum of twenty-three hundred dollars. The cash payment to be made to him at this time is estimated to be from one thousand to twelve hundred dollars, and the remainder to be paid to him, one-half of all the moneys received from the Randall Bros., as made by them on the deferred payments.

"All payments to be made at the Black Duck State Bank."

The defense is a supposed utter lack of any authority in Witting, vice president of defendant, to bind it in such fashion. Mr. Witting, together with A. B. Moritz and Dr. R. H. Monahan, were the sole stockholders of defendant. They seemed to have owned its stock in substantially equal portions. Mr. Moritz was president. Express authority is not claimed, and we do not find evidence to justify the conclusion that there was any other. There was ratification to the extent hereinafter dealt with.

■ Neither the president nor vice president, by virtue of his office alone, had authority to employ plaintiff as a broker and fix his commission. Bloomingdale v. Cushman, 134 Minn. 445, 159 N. W. 1078; Wait v. Nashua Armory Assn. 66 N. H. 581, 23 A. 77, 49 A. S. R. 630, 14 L. R. A. 356; 7 R. C. L. pp. 450-454; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2114. It is suggested that, the president being absent when the contract was made, Witting, as vice president, had authority to make it. In the absence of anything showing that the president himself had the power to bind the corporation by such a contract, there is of course nothing to that suggestion.

■ Although Witting ought to have been a rather important witness for plaintiff, he did not testify. His associates, Moritz and

Monahan, say that they never knew of plaintiff's supposed contract until this suit was started. They aver also that they never saw it until it was produced at the trial. Their testimony is not denied and finds strong corroboration in the minutes of a meeting of the three stockholders held August 9, 1929. The final contract with Randall Brothers was entered into, as already indicated, June 20. July 10 plaintiff procured from Witting the "certificate" already quoted, assuring him that his commission was to be $2,300. Thereafter, August 9, 1929, there was a stockholders' meeting to confirm the sale. Monahan, Moritz, and Witting were all present. Without suggesting that plaintiff should be dealt with in any other fashion, without disclosing his own agreement with plaintiff concerning commission, Witting acquiesced in the adoption of a motion then recorded as follows:

"A motion was made and unanimously carried that the directors be authorized to pay Mr. Thompson of Black Duck [plaintiff] a reasonable commission for making the above sale."

Plaintiff's theory is that he is entitled to all of the net proceeds of the sale in excess of $15,000. The verdict awards recovery on that basis, allowance being made for admitted credits.

We cannot sustain it. There was ratification, after the sale, of Witting's employment of plaintiff as a broker, but there was no ratification of Witting's promise or agreement that plaintiff should have all the purchase price in excess of $15,000. Without knowledge by the directors of all the essential conditions of that agreement, it cannot be said that there was any ratification of all such conditions.

"The principal is not chargeable with liability on the ground of having ratified such a contract, in the absence of notice or knowledge on his part of its unauthorized terms." John Gund Brg. Co. v. Tourtelotte, 108 Minn. 71, 121 N. W. 417, 29 L.R.A.(N.S.) 210; 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 181.

Of course a corporation or any other principal, without full knowledge of all the material facts, may ratify any unauthorized

act of an agent by intentionally assuming the risk without inquiry. Ignorance of some conditions is no protection where there is intentional ratification of the whole or where the principal was put upon inquiry. The principal cannot purposely shut his eyes to means of information readily available to him and thereby secure for himself the benefit of the transaction and then repudiate any of it. Johnson v. Ogren, 102 Minn. 8, 112 N. W. 894.

But that is not this case. There is no suggestion that at the stockholders' meeting which confirmed the sale to Randall Brothers and ratified plaintiff's employment Monahan and Moritz knew anything about Witting's secret agreement with plaintiff. There was nothing to put them on inquiry—nothing to suggest that Witting had attempted to bargain away all the selling price in excess of $15,000. The conclusion is inescapable, from the record, that Witting, their trusted associate, who was under the duty of prompt and full disclosure, deliberately and in bad faith concealed what he had already done with plaintiff. Knowing of plaintiff's employment by Witting, knowing of the sale and nothing more, the three stockholders, acting also as directors, Witting himself being one of them, recognized the employment and plaintiff's right to recover a reasonable sum by way of commission. He cannot, on this record, prevail on any other theory.

Of course, having ratified the employment, and with knowledge having taken the benefit, defendant cannot be the exclusive judge of the amount of recovery. That is a fact issue and the only remaining one to be settled. It follows that the order appealed from must be reversed and the case remanded for a new trial of the single issue as to the reasonable value of plaintiff's services and his recovery on that basis after allowing the proper credits.

That plaintiff was the source of what seems on the record to have been a deal much to defendant's liking and advantage is not denied. His services were valuable, his right to compensation contingent on success. It is hoped therefore that with the aid of counsel the parties will manifest a sufficient spirit of accommodation to render unnecessary a trial of the rather limited issue remaining.

The order appealed from must be reversed and the case remanded for a new trial of the single issue above stated.

So ordered.