Joseph D. LOSINSKI, Respondent,

v.

AMERICAN DRY CLEANING CO., Appellant,

Mary C. Losinski, personal representative to the estate of Joseph Leo Losinski, deceased, et al., Respondents.

No. 48946.

Supreme Court of Minnesota.

Aug. 3, 1979.

Streater, Murphy, Brosnahan, Langford & Gernander and Richard Beerling and Robert D. Langford, Winona, for appellant.

William Lindquist, Winona, for respondent Joseph D. Losinski.

Goldberg, Torgerson, Brewer & Kellum, Winona, for respondent Mary C. Losinski et al.

Heard before OTIS, ROGOSHESKE, and MAXWELL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Defendant American Dry Cleaning Company appeals from an adverse judgment and from an order denying its motion for a new trial. After a trial to the court, the district judge found that defendant had impliedly ratified an option to purchase substantially all of its assets unauthorizedly granted to plaintiff, Joseph D. Losinski, by one of its officers. Based upon that finding, the trial court concluded that plaintiff was entitled to specific performance of the option. We conclude that, on the facts established, the principle of implied ratification is inapplicable and, accordingly, we reverse.

Defendant American Dry Cleaning Company is a Minnesota corporation, incorporated on June 5, 1970. Joseph L. Losinski furnished the capital for the corporation. He, his wife, Mary, and their six children, Rosmary, Joseph D. (plaintiff herein), Robert, Daniel, James, and Marcina, were the incorporators and shareholders. Although the corporation has the usual articles of incorporation and bylaws specifying the rights, duties, and obligations of the offi-

cers, directors, and shareholders, it was operated informally, basically in compliance with the wishes of its founder, Joseph L. Losinski. Substantially all the corporate assets consist of the real estate known as the "Carriage House Cleaners." Joseph L. Losinski and Mary, his wife, operated the cleaners under a lease from the corporation until April 1976, when Joseph became terminally ill. Shortly thereafter, the shareholders met and passed a resolution empowering Mary Losinski, the vice president, to employ additional persons to assist in operating the business. The resolution also provided that if a change in operation was needed, all shareholders would be notified and a meeting called.

Plaintiff, the eldest son of Joseph, testified that in May 1976 his father told him that he wanted him to run the cleaners and proposed a 1-year lease with an option to buy. The terms of the agreement were to be $200 per month rental with a purchase price of $20,000, all rentals to be applied to the purchase price upon exercise of the option. Joseph allegedly cautioned his son that corporate approval was necessary before the transaction could be finalized and told him that he would discuss the matter with the remaining shareholders. Plaintiff testified that later in May his father informed him that he had obtained the required approval and, at that time, instructed his mother to have the papers drawn up. Mary Losinski denied all such conversations. The other shareholders testified that their father never mentioned the proposed transaction.

Early in June 1976, a lease with an option to purchase was prepared by a local attorney pursuant to instructions from Mary Losinski. She executed the agreement as vice president of the corporation. Plaintiff subsequently signed the document. The terms were those plaintiff allegedly discussed with his father. Mary Losinski stated, however, that she intended to execute only a year's lease and that the agreement contained no purchase option when she signed it. Plaintiff commenced operating the cleaners in June 1976.

On August 4, 1976, the shareholders met. They reprimanded plaintiff for his poor management of the cleaners and threatened to remove him from its operation. A motion was made and passed to have plaintiff's contract copied and distributed to the shareholders for the purpose of recommending updating or additions. The resolution was never carried out. Plaintiff did not disclose the existence of the option, and the other shareholders testified that they believed the agreement to be a lease. In January 1977, plaintiff informed Daniel that he had an agreement permitting him to purchase the cleaners but declined to show it to him, and his mother, Mary, told Daniel that there was no such document.

Plaintiff made rental payments through March 1977. After the death of Joseph on March 11, 1977, plaintiff twice attempted to tender the purchase price for the cleaners specified in the option. Mary Losinski refused the tenders. The shareholders first received copies of the lease and option in April 1977 when plaintiff mailed them notice of his intent to exercise the option. On April 28, 1977, at a special meeting of the shareholders, a resolution was passed to take all necessary steps to avoid the option provision of the agreement.[1]

Plaintiff brought this action for specific performance of the contract to convey real

---

1. The minutes of the special meeting of the shareholders held on April 28, 1977, read in pertinent part:
   "Sixth Order of Business:
   "A vote and motion was taken:
   "Motion made by Rose M. Averbeck, that the Corporation bring necessary action to void the contract provision relating to the option contained [in the] purported lease agreement dated June 1st., 1976, and that the officers of the Corporation take such steps as necessary including engaging a Corporation attorney and commencing action to void the purported agreement.
   "James C. Losinski seconded the motion.
   " * * * [A] vote was taken by individual voice vote * * *. Vote was as follows: Mary C. yes, Rose M. yes, Marcina L., yes, Robert J., yes, Daniel F., yes, James C., yes and Joseph D., no. Passed.
   "Mr. Langford was then engaged by the shareholders present."

estate created by his alleged exercise of the option or, in the alternative, for damages for fraud. Various other issues were raised by crossclaims and counterclaims. At the pretrial conference, it was decided to try the claim for specific performance to the court and to sever all other claims and reserve them for a jury trial. After trial of the issue to the court, the trial judge concluded that plaintiff was entitled to specific performance on the ground that the corporation had impliedly ratified the option contract. He further concluded that the option covered only the land and building, not inventory, equipment, or good will. Defendant corporation's motion for amended findings or a new trial was denied, and defendant appealed. The dispositive issue raised on appeal is whether the option contract, entered into by Mary Losinski admittedly without authority, was ratified by the corporation.

■■■■ If a corporate officer or agent performs an act or enters into a contract or other transaction without authorization but which could have been authorized in the first instance by the directors or stockholders, such contract or transaction may become binding on the corporation if ratified expressly or by implication. 2 Fletcher, Cyclopedia Corporations (Perm. ed.) § 752. The general rule is that ratification must be by the principal with knowledge of the material facts of the transaction, although if the circumstances are such as to put a reasonable person on inquiry the corporation is considered to have knowledge of any facts such inquiry would disclose. See, *Keough v. St. Paul Milk Co.*, 205 Minn. 96, 285 N.W. 809 (1939); *Thompson v. North Star Muskrat Farm, Inc.*, 183 Minn. 314, 236 N.W. 461

(1931). Where, however, it is necessary that authority to do a particular act or enter into a particular contract be given in a certain form or mode in the first instance, either by reason of mandatory charter or statutory provision, or by reason of a common-law rule, ratification of such act or contract must follow the prescribed form or mode. 2 Fletcher, Cyclopedia Corporations (Perm. ed.) § 768.

■■■■ Article III of the Articles of Incorporation of the American Dry Cleaning Company specifies that the corporation has the power:

"c. When and as authorized by the vote of the holders of not less than a majority of the shares entitled to vote, at a shareholders' meeting called for that purpose or when authorized upon the written consent of the holders of a majority of such shares, to sell, lease, exchange, or otherwise dispose of all, or substantially all of its property and assets * * *."[2]

A sale of substantially all the corporate assets is an especially important transaction, and the purpose of such a provision is to protect shareholders from the destruction of the means to accomplish the purposes for which the corporation was incorporated. It is undisputed that in the present case no special meeting of the shareholders was called to authorize the sale of the corporate assets to plaintiff, that the shareholders never voted to authorize such sale, and that they never gave written consent to the transaction. Since the articles of incorporation prescribed a particular method of conferring authority to enter a sale agreement in the first instance, any valid ratification was required to take the same form. The

2. This provision paraphrases Minn.St. 301.36, which states: "A corporation may, by action taken at any meeting of its board of directors, sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property and assets, including its good will, upon such terms and conditions and for such considerations, which may be money, shares, bonds, or other instruments for the payment of money or other property, as its board of directors deems expedient, when and as authorized by the vote of holders of shares entitling them to exercise at least two-thirds of the voting power on such proposal or the vote of such other proportion, not less than a majority, or vote by classes, as the articles may require, at a shareholders' meeting called for that purpose, or when authorized upon the written consent of the holders of such shares. Notice of any such meetings shall be given to all shareholders of record, whether or not they shall be entitled to vote thereat."

trial court, therefore, erred in applying the principle of implied ratification.[3]

Reversed.

SCOTT, J., took no part in the consideration or decision of this case.

**3.** Our holding does not leave an alleged innocent third party without a remedy. The principal may be bound by an unauthorized agreement if apparent authority of the agent is proved. Restatement, Agency 2d, § 159. Furthermore, an agent, purporting to contract without power to bind, is subject to liability upon an implied warranty of authority when the third party has no knowledge that his actions are unauthorized. Restatement, Agency 2d, § 329.