## Daniel D. Schrœder

### *v.*

## Joel D. Harvey.

1. Evidence — *admission of improper, will not always reverse.* Where a cause is tried by the court without a jury, and there is enough of unobjectionable testimony to sustain the finding of the court, it will not be disturbed, notwithstanding the reception of incompetent evidence, as the same harmful effect does not follow in such a case, as when before a jury.

2. Forgery — *sufficiency of evidence.* When it is proved that the indorsement of a payee's name upon a bank check is not in his handwriting, this must be held *prima facie* sufficient to establish the fact that the indorsement is a forgery. It is true, the signature need not be in the hand-

writing of the indorser, but if it be not, there must be proof that he author-
ized it to be made.

3. SAME — *of the notice to be given on discovery.* Where a bank pays a
check drawn on it in favor of a party whose indorsement thereon is forged,
and the same has passed through several hands, only reasonable diligence
is required to be exercised in giving notice to prior holders, of the forgery,
after its discovery, in order to hold them liable.

APPEAL from the Superior Court of Cook county; the Hon.
JOSIAH MCROBERTS, Judge, presiding.

This was an action of assumpsit, originally brought by the
Franklin Bank against Daniel D. Schrœder, for money paid
upon twelve dividend warrants drawn by Thomas Buckley, as
assignee in bankruptcy of the Home Fire Insurance Company,
upon the Mechanics' Bank in Chicago, and in favor of various
creditors of the bankrupt company. They were in the nature
of bank checks, and negotiable. The defendant cashed them
for L. Seckel, a clerk of the drawer, and deposited them in the
Franklin Bank for collection. The Franklin Bank sent them
to the Mechanics' Bank, which paid them and charged them to
the account of the drawer. The payees' names were upon the
back of these checks or warrants when they were transferred
by Seckel to the defendant. Upon discovery that the indorse-
ment of the payees' names were forgeries, the Mechanics' Bank
credited the account of Buckley with their amount, and returned
the same to the Franklin Bank, which took them up and paid
their amount to the Mechanics' Bank. The forgery was dis-
covered on August 4, and the Franklin Bank, upon taking up
the checks on August 9, notified the defendant of the forgery,
and demanded payment, and on refusal, brought this suit. The
Franklin Bank having been put in bankruptcy, Joel D. Harvey,
its assignee, on petition was substituted as plaintiff, and recov-
ered judgment, from which the defendant appealed.

Mr. B. W. ELLIS, for the appellant.

Messrs. J. C. & J. J. KNICKERBOCKER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action for money had and received, brought by the Franklin Bank against Schrœder, the appellant, to recover the money paid upon twelve dividend warrants, made by Thomas Buckley, as assignee of the Home Fire Insurance Company, a bankrupt, to various payees, and drawn upon the Mechanics' Bank in Chicago. The warrants are in the nature of bank checks, and payable to the payees or order. Schrœder cashed them for L. Seckel, a clerk of the drawer, Buckley, and deposited them with the Franklin Bank, with his name indorsed upon them, and received from that bank the money for them. The Franklin Bank sent them to the Mechanics' Bank, which paid them, and charged them to the account of the drawer, Buckley, assignee, etc. The payees' names were on the backs of the warrants when they were transferred to Schrœder. Appellee, the Franklin Bank, claims that the payees' names on the warrants are forgeries. Buckley, on discovery of the supposed forgeries, communicated the fact to the Mechanics' Bank; that bank credited him again with the amount of the warrants, and returned them to the Franklin Bank, which latter bank redeemed them, and brought this suit against Schrœder for the money.

The cause was tried by the court below without a jury, the issue found for the plaintiff, and damages assessed at $721.05, the amount of the warrants. Schrœder appeals to reverse the judgment.

Appellant makes two points:

First. That there is no sufficient proof that the payees' names indorsed upon the warrants are forgeries, except as to three of the warrants.

Second. That, if they were forgeries, the Franklin Bank, or those under whom it claims, were guilty of such negligence in giving notice of the forgery after its discovery, as to release appellant from liability upon the warrants, or to refund the money received upon them.

The admissibility of some testimony of questionable competency, which was received by the court below, has been discussed in argument, as for instance, that, as to the opinion as to the genuineness of the signatures of the payees' names, formed from comparing them with the payees' signatures to their proofs of insurance losses filed with the insurance company.

But we do not deem it necessary to consider this, as there was enough other testimony, of unquestioned competency, sufficient, in our opinion, to sustain the finding of the court; and where that is the case, and the trial before the court alone, the finding should stand, notwithstanding the reception of other incompetent evidence.

There does not follow the same harmful and erroneous effect as when the admission of such evidence is before a jury.

The evidence shows that Buckley was the assignee in bankruptcy of the Home Insurance Company; that his deposits as such assignee were with this Mechanics' Bank; the mode of payment of the creditors of the company, as dividends were declared, was by issuing to them these dividend warrants drawn on the bank. Seckel was a clerk in Buckley's office, and in the latter's absence would deliver the warrants to the creditors. These twelve warrants were all made out at the same time. They all bore upon them the indorsement of Seckel's name, as well as those of the payees. What led to the discovery of the alleged forgeries was, that another one of this class of warrants had been returned by another bank, the check having been "raised" from six to sixty dollars; this, like the others, bore upon it the indorsement of Seckel's name. On commencing to investigate into that matter, Seckel left, and has not been seen since. Mr. Holden, an attorney at law, had had entire charge of the affairs of the company, and of the assignee, as attorney. He, as well as Buckley, had become familiar with the handwriting of Seckel, having seen much of it in the office. As to the three warrants, the forgery as to which is not contested, the payees themselves testified to the forgery of their

names upon them, and two of them testified that they had never before seen the warrants which were payable to them.

As to three other of the warrants, the names of the payees in them were those of persons who had no claims against the insurance company, and were entirely unknown to Buckley. It was in testimony that it was customary, and always required by Mr. Holden and Buckley, that the creditor, upon taking his warrant for his dividend, should sign a receipt for it on the stub of the check in the check-book. As to all these twelve warrants, the creditors' receipts were not obtained. As to nine of the warrants, the testimony of the payees was not had. But Mr. Holden unequivocally, and Buckley in his opinion, pronounce the signatures upon all of the warrants of the names of the payees, to be in the handwriting of Seckel. We regard this evidence as sufficient to justify the finding that such was the fact. But it is insisted that that fact alone does not establish the forgery; that Seckel may have written the payees' names upon the back of the warrants, at their direction, and in their presence, and that though the indorsements be in the handwriting of Seckel, still they may be the valid and genuine signatures they purport to be. But it must be held *prima facie* to establish that the indorsements appearing upon the warrants are not the valid indorsements of the payees, when it is proved that they are not in the handwriting of such payees. It cannot be required of the plaintiff, in the first instance, to go further, and prove a negative, that the payees did not authorize Seckel to write their names.

The signature need not be in the writing of the indorser, but if it be not, there must be proof that he had authorized the signature. 2 Parsons on Notes and Bills, 16. But there is here, in addition, evidence rebutting the idea of any authority having been given by the payees to Seckel, to write their names upon the warrants, to wit: that it was the uniform practice to require of creditors receiving such warrants, to receipt for them upon the stubs of the warrants, and that no

such receipt appears in the case of any one of these warrants. This tends to show that the warrants never came into the hands of the payees, and that they knew nothing of them, so that they could give any authority to indorse them.

And further testimony to the same end, is that of Holden, that he and Buckley repeatedly instructed Seckel, that they wished these warrants to bear the genuine signatures of the payees because they wanted them as vouchers.

There was no opposing testimony upon the question of forgery. The testimony in the case, which is not questioned as to competency, is to our minds satisfactory that the indorsements on these warrants of the names of the payees were forgeries.

As to the other point, of delay in giving notice of the forgery, all the parties through whose hands the warrants passed, resided in the city of Chicago. The testimony shows that Buckley, upon his suspicion being excited by the circumstance of the "raised" check above mentioned, immediately went to the Mechanics' Bank, and requested to have his account written up as soon as could be, in order to obtain all the warrants there. This was done, and the warrants returned to him as vouchers, on the 5th of August, 1873, as he thinks; that then a thorough investigation was had, to ascertain what ones of them were forged; that this consumed two or three days, the whole number of the warrants being twelve or fifteen hundred; that the forged ones were those returned to the Mechanics' Bank, on affidavit made of the forgery, and that bank then credited Buckley with the amount of the warrants.

The cashier of the Mechanics' Bank testifies, that, on return of the warrants by Buckley, they were assorted to each bank that had sent them to the Mechanics' Bank. Those assorted to and sent by the Franklin Bank were sent to that bank as soon as it could be done, the next, if not the same day, and that bank paid the money for them. It appears that the Franklin Bank had no notice of the forgery before the 9th day of August, 1873, and it is admitted that Schroeder had notice of it on that day.

The precise day on which Buckley acquired, or the Mechanics' Bank had notice of the forgery, is left somewhat indefinite by the evidence, further than as may appear by the affidavit of the forgery before referred to. As appears from that affidavit, it was made out on the 6th of August, 1873, and Buckley discovered the warrants to be forgeries on the 4th day of August, 1873.

As to the rule to be applied to the facts, appellant's counsel insists that at least as great, if not greater diligence is required in giving notice of the forgery, as is necessary to fix an indorser, and cites in support of such rule, *Cox* v. *Masterman*, 9 Barn. & Cress. 902, and Parsons on Notes and Bills, vol. 2, 599, where it is said, "Notice must be given to the holder as soon as the forgery is discovered;" and Edwards on Bills and Notes, 179, where, in reference to the payer of a bill, where there is such a forgery, it is laid down: "But he must act promptly, and must not be guilty of any delay in giving notice of the forgery as soon as he ascertains the fact. For if he has given currency to the bill having upon it a forged indorsement, or been guilty of a want of diligence in giving notice, he cannot recover back the money paid," citing in support the case of *Cox* v. *Masterman.*

In *Canal Bank* v. *Bank of Albany*, 1 Hill, 287, this case of *Cox* v. *Masterman* is commented upon, and disapproved as authority, at least beyond its own peculiar circumstances; the plaintiff there, paying the forged acceptance, being chargeable with a knowledge of the handwriting forged, and therefore paying it negligently and without due caution. And it is there said, in the case of the *Canal Bank* v. *Bank of Albany*: "But, where each party enjoys only the same chance of knowledge (of the handwriting forged), no case demands any thing more than reasonable diligence in giving notice after a discovery of the forgery." The same principle is declared in *Bank of Commerce* v. *Union Bank*, 3 Comst. 230. In *Sims* v. *Clark*, 11 Ill. 137, it was held by this court, that in case of a counterfeit

bill, the party receiving it must return it within a reasonable time after it is discovered to be spurious, or he loses his recourse upon the person from whom he received it, and that what shall be considered a reasonable time must necessarily depend upon the situation of the parties, and the facts and circumstances of the particular case; and so, also, in *Magee* v. *Cormack*, 13 Ill. 289; *Union National Bank of Chicago* v. *Baldenwick*, 45 id. 376.

The rule insisted upon by appellant's counsel we regard a too rigorous one, as applicable here, and that the better authority is, that only reasonable diligence was required to be exercised in giving notice of the forgery after its discovery.

We cannot say that the court below erred in finding that, under the circumstances of the present case, there had been such reasonable diligence used.

The judgment will be affirmed.

*Judgment affirmed.*