### Tina Worthing, Appellee, v. L. N. Hall, Executor, Appellant.

### Gen. No. 5,199.

1. ADMINISTRATION OF ESTATES—*when jury trial not matter of right.* In determining the question whether a legacy is a charge against an estate and shall be paid by the executor thereof, a jury trial cannot be demanded as a matter of right.

2. ADMINISTRATION OF ESTATES—*when a verdict merely advisory.* If in the course of the administration of an estate a jury trial is had, not as a matter of right, the verdict rendered is advisory only. It is like any other verdict in a purely equitable proceeding and the court may completely ignore such verdict and enter such an order as equity may require, though it be very different from the verdict rendered by the jury. In consequence, the question whether the court gave improper or refused proper instructions upon such a jury trial is immaterial on review.

3. EVIDENCE—*when objections to competency waived.* A party cannot offer the deposition of an adverse party, or parts of such deposition, and then urge objections to any portion thereof offered by him, nor can objections be urged which may be noted in such deposition if the portions to which such objections referred were not read to the jury.

4. EVIDENCE—*when secondary incompetent.* The contents of letters cannot be proven by parol if no effort had been made to obtain the production of the original letters.

Objections to the executor's report. Appeal from the Circuit Court of Kendall county; Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910.

W. M. MERCER, for appellant.

JOHN FITZGERALD and SEARS & SOLFISBURG, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Henry Minard and Tirzah Minard, his wife, residents of Kendall county, made a joint will on the first day of December, 1883, to which will several codicils were afterwards added, the last codicil being dated November 8, 1887. The third clause of this will, which is the only part involved in this case, reads as follows:

"Third. To Tina Worthing of Kendall County, Illinois,—a niece of the said Tirzah Minard—the sum of One Thousand ($1000.00) Dollars in money and the half of our household goods and wearing apparel."

Henry Minard, one of the testators, died in 1888. Tirzah Minard died in February, 1904. The joint will was probated in the County Court of Kendall county, the appellant was appointed executor, and in due course of time filed his final report, setting out that all of the legatees under the will have been paid and the legacies discharged before the death of Tirzah Minard. To this report Tina Worthing, the appellee, filed exceptions in the County Court, denying that any part of said legacy to her had been paid, either before or after the death of said Tirzah Minard. Her exceptions to the final report of the executor were overruled by the County Court, and appellee prayed and perfected an appeal to the Circuit Court. Upon a trial in that court, before a jury, of the issue whether the legacy to Tina Worthing had been paid, a verdict was returned finding for appellee in the sum of $1,049.31, the amount of the legacy with interest from the date of the approval of the final report except as to said legacy and one other, motions for a new trial and in arrest of judgment were overruled, and judgment was entered in favor of appellee, finding the legacy unpaid and ordering the executor to pay Tina Worthing .

$1,046.31, the amount of the verdict, less $3 interest remitted, from which judgment the executor appeals to this court.

Appellant claims that the legacy to appellee, mentioned in said third clause of this will, was paid by the said Tirzah Minard in her lifetime; that Tirzah Minard had and executed a general and definite scheme for satisfying all of the legacies and for carrying out all of the provisions of her will in her lifetime; and that the trial court erred in rejecting certain testimony offered by appellant, and also erred in refusing to give certain instructions to the jury, asked on behalf of appellant, and in giving certain instructions requested by appellee.

The proofs in this cause showed that the executor had in his possession, after paying all other claims, legacies and costs, a considerable sum of money more than was necessary to pay the legacy to appellee, so that the only question to be determined here is whether appellee was entitled to the legacy. This was not a claim against the estate, such as is provided for in section 60 of the Administration Act, and neither party had a right to a jury. The settlement of the accounts of executors and administrators proceeds upon equitable principles, and while the court may impanel a jury to try a question of fact, yet the court is not bound by the verdict. It is advisory only, like any other verdict in a purely equitable proceeding, and the court may completely ignore the verdict and enter such an order as equity may require, though it be very different from the verdict returned by the jury. Therefore the question whether the court gave improper or refused proper instructions to the jury is immaterial in this case. Furthermore, if there was sufficient competent evidence to sustain the finding, the rulings of the court upon the evidence are immaterial, unless the court kept out some competent evidence. Schroeder v. Harvey, 75 Ill. 638; Palmer v. Meriden Brittannia Co., 188 Ill. 508; Grand Pacific Hotel Co. v. Pinkerton, 217 Ill. 61.

Appellee lived in California and seems not to have been present at the trial. Her deposition was taken in her behalf in California and filed in the case. At the trial appellee's attorney assumed the affirmative to sustain the exceptions to the final report, and introduced in evidence the will and its codicils and the order of probate, and proved by the executor that the debts were paid and that he had on hand more than sufficient funds to pay this legacy. Appellee then rested. Appellant then offered in evidence the deposition of appellee, which largely related to matters occurring in the lifetime of the testatrix. Appellee was not a competent witness in her own behalf on these subjects, but she was a competent witness for appellant if he chose to make her his witness. By offering her deposition he made it competent. The deposition had been taken on oral interrogatories, and it shows objections by appellant to various questions and answers. As the deposition is given in the bill of exceptions, some of these objections by appellant appear to have been overruled and an exception by appellant preserved. We do not see how appellant could offer a question and its answer and at the same time object to it and except to a ruling upon it. If there was anything in the deposition which appellant did not wish to offer, no ruling of the court compelled him to offer it. Appellee did not offer any part of the deposition. The position was not taken by the court or by appellee that appellant must offer the whole deposition. No part of it went to the jury except what appellant offered and read. No question therefore is saved by these exceptions by appellant to what he himself offered. This deposition and the documentary evidence contain substantially all the material proof in this case.

When the will was executed the testatrix and her husband and appellee, whose full name is Chastina Worthing, all lived in Kendall county, in this state. Afterwards appellee removed to Redlands, California,

and had a home there. The second year after the death of her husband, Mrs. Minard went to California and lived with appellee for two years. While so residing with appellee, Mrs. Minard was poisoned by the bite of a black spider and became suddenly and dangerously ill in consequence thereof. Appellee took prompt and vigorous action before competent medical assistance could be obtained, and the physicians afterwards assured Mrs. Minard that she would have died but for the exertions of appellee. Appellee cared for Mrs. Minard during that illness. At some time about the middle of that visit, but whether before or after this illness is not clearly shown, though apparently it was afterwards, Mrs. Minard handed to appellee $1,000 and at her request appellee signed the following document:

"Redland, Calif., June 1st, 1891. I promise to pay Tirzah Minard interest on One Thousand Dollars at 7% during her natural life and if I care for her in her death, it, the thousand dollars, shall be mine aside from what is willed Chastina Worthing in Henry and Tirzah Minard's will.

CHASTINA WORTHING."

Mrs. Minard had apparently gone to California with the intention of remaining there the rest of her life, but afterwards her sister, the mother of appellee, died and Mrs. Minard thereupon became desirous of returning to Illinois while she was alive, as she desired to be buried in Kendall county by the side of her husband. When she determined to return to this state appellee offered to return with her and to take care of her, but Mrs. Minard declined the offer because of appellee's ill health. After Mrs. Minard had returned to Illinois appellee wrote to her offering to come to Illinois and take care of her, but Mrs. Minard replied that appellee's health was too poor. The proof is that this $1,000 which Mrs. Minard handed to appellee on June 1, 1891, was the only money which Mrs. Minard paid to appellee during the two years in which Mrs. Minard made her home with

appellee. Mrs. Minard therefore did not pay her board or other expenses, nor pay for the care which appellee gave her during her serious illness, except as said payment may have been covered by the $1,000. Appellee paid the interest to Mrs. Minard upon this instrument at 7% for a time, and afterwards Mrs. Minard reduced the interest to 5% and appellee continued to pay the interest at that rate during the rest of Mrs. Minard's life. The deposition did not show clearly all that induced Mrs. Minard to hand appellee $1,000 and to take this instrument from her. But appellee testified that she considered she ought to have more (meaning apparently more than other nephews and nieces who were legatees), because of what she had done for Mrs. Minard, and that she understood this $1,000 to be a gift to appellee because of what appellee had done for Mrs. Minard. Soon after Mrs. Minard had returned to Illinois she drew and signed and sent to appellee the following instrument:

"Due Tina Worthing one thousand dollars at the date of my demise, and I direct my executor to pay said Tina Worthing said sum of One Thousand dollars out of the proceeds of my estate as soon after my demise as it conveniently can be done. Dated at Oswego, Ill., this 4 day of October, A. D. 1892.

TIRZAH MINARD. (SEAL).

In presence of Mary Gaylord."

Under date of June 28, 1893, Mrs. Minard wrote appellee a letter relating in part to her property affairs, in which she said among other things: "have given Nellie, Mary, Eugene, Henry, the same as you last fall. I gave John a note of $1,000. He directly took counsel to see if he could collect it from the estate. He does not like the manner I distributed my property; thinks I should not give it to that preacher factory. He and Mary both treat me with about the same attention they would a chinaman." Under date of August 21, 1894, Mrs. Minard wrote some directions to "Whoever attends to the distribution of my property" in which she gave various directions about her property, and among

other things said: "I have given notes to the following names: $1,000 each Henry Eugene Minard, C. C. Collins, Nellie Brainard, Mary Murray, Chastina Worthing. I also given notes of $500 to each of these names H. M. Tenney, T. C. Richards, Lulu Vining, Cecillia Williams." Appellant called several witnesses residing in Illinois, but little or nothing was proved by them material to the question here involved.

Do these documents show that the legacy to appellee was paid by Mrs. Minard in her lifetime? Under the proof the court was warranted in finding that Mrs. Minard handed appellee $1,000 on June 1, 1891, because of the support and care she had received from appellee and expected to receive from appellee in her home, and that she then expected that appellee would care for her in her death. The document expressly states that if appellee did care for her in her death, that $1,000 should belong to appellee, besides what was willed to appellee in the joint will of Mrs. Minard and her husband. Appellee did all that she could do to fulfill her part of that contract. She paid the interest to Mrs. Minard and Mrs. Minard received it from her till Mrs. Minard's death. She offered to come to Illinois with her and care for her. After Mrs. Minard had returned to Illinois she offered to move to Illinois and take care of her. Mrs. Minard declined both offers, giving as her reason the state of appellee's health. By declining to let appellee perform that part of the contract, Mrs. Minard absolved appellee from it. If that $1,000 is held to be a payment of this legacy, it must be so held against the express language of the document and against the evident intention of the parties. The instrument which Mrs. Minard drew on October 4, 1892, soon after her return to Illinois, and sent to appellee, we think justifies the conclusion that Mrs. Minard feared that her refusal of appellee's offers to come to Illinois and take care of Mrs. Minard might be taken by some one to mean that because that part of the contract of June 1, 1891,

would not be carried out in full, appellee would have to pay that $1,000 or in other words would lose her legacy, and that Mrs. Minard designed by that last document to prevent any such conclusion. Certainly it rebuts any possible inference that she believed that she had paid the legacy and that appellee should receive nothing further from her estate. The letter of June 28, 1893, and the directions in the paper of August 21, 1894, indicate that she had given like papers to other nephews and nieces. But it does not appear that she had ever given to any of them a sum of money accompanied with such an instrument as that which she took from appellee on June 1, 1891. What she really did for her other nephews and nieces, and what, if any, financial relations she had with them, does not appear, and is not material. It does appear from her conversations that she had some notion of paying off her legacies in her lifetime, but we do not think that the court would be justified in holding that the transaction of June 1, 1891, was intended by Mrs. Minard as a payment of that legacy when the contrary is plainly expressed in the paper which Mrs. Minard prepared and appellee signed.

Appellant called the witness, Hester A. Miller, who, as a deaconness of the Methodist Church, was sent to take care of Mrs. Minard the latter part of her life, certain societies of that church being beneficiaries under the will. She testified that she had frequent talks with Mrs. Minard about her making her home with appellee. She was asked what Mrs. Minard said, and the court sustained an objection to the question and this is assigned as error. The witness was asked to repeat numerous conversations in a single answer, without anything to indicate that the answer would have any relation to any matter in issue in this case. If Mrs. Minard made any statement that bore any relation to this legacy or to her purpose in handing $1,000 to appellee, the attention of the witness should have been directed to that particular conversation and subject-matter. There is nothing in this record to indicate that

the answer would have been material or beneficial to appellant. Miss Miller testified that while she resided with Mrs. Minard she corresponded with appellee at Mrs. Minard's request when Mrs. Minard was too sick to write; that she did not keep copies of the letters which she wrote and that she burned those which she received, and that she knew the substance of their contents. She was then asked to state that substance, and the court sustained an objection to that question. We think the court ruled correctly. Whatever letters she wrote appellee were not proved to have been destroyed. Appellee had been examined concerning letters written by Mrs. Minard, but not as to letters written to her by Miss Miller. No notice was given appellee to produce the letters written her by Miss Miller. In the giving of her deposition appellee presented for the inspection of appellant's counsel all letters from Mrs. Minard which she could find, and he examined them and introduced in evidence one or two of those letters. There was no proof that he introduced all of them. It may be that the desired letters from Miss Miller would have been produced if due notice had been given. The question did not call for the substance of the letters written by Miss Miller separate from the others, but it was one general request for the substance of all the letters. Miss Miller did not claim to know how many letters she had written or received, nor when any of them were written or received, nor to be able to distinguish one letter from another. We are of opinion it would have been error to permit her to give her general recollection of the substance of the entire correspondence, without any notice to appellee to produce it.

Complaint is made that the court refused to permit appellant's witness, Dr. Van Deventer, to state the substance of what Mrs. Minard said to him about her residence in California. There was nothing to show that the answer would have been material to anything in the case. The court properly refused to permit the same witness to state the substance of a letter which

he wrote to appellee, no notice having been given appellee to produce the original.

Appellee was not asked concerning that letter in her deposition.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*