CHICAGO—FIRST DISTRICT—JANUARY, 1914.    493

Hamlins Wizard Oil Co. v. U. S. Express Co., 184 Ill. App. 493.

## Hamlins Wizard Oil Company, Appellee, v. United States Express Company, Appellant.

### Gen. No. 18,352.

1. PRINCIPAL AND AGENT, § 137*—*when employer's failure to audit books not negligence preventing recovery from party receiving checks and drafts on forged indorsements of employer's bookkeeper.* A bookkeeper for a firm was charged with the duty of buying money orders of an Express Company and he usually paid therefor with checks or drafts payable to the firm's order and remitted to it by its customers. After he had left the firm's employment it was discovered that he had for several years been appropriating to his own use a large number of such checks and drafts by forging the firm's indorsement thereon to procure money orders, and that he had concealed the fraud by false entries in the books. *Held*, in an action by the firm against the Express Company to recover the amount of the checks and drafts received by the defendant upon such forged indorsements that the relations between the plaintiff and defendant were simply that of customer and seller, that the plaintiff owed no duty to defendant that could affect its method of bookkeeping and that therefore plaintiff's failure to audit the books so as to prevent the fraud was not such negligence as could be availed of as a defense to the action.

2. BILLS AND NOTES, § 409*—*burden of proving authority to indorse.* In an action against an Express Company to recover the amount of checks and drafts received by the Express Company upon the forged indorsements of plaintiff's name thereon by plaintiff's bookkeeper in payment for money orders, the burden is upon the defendant to prove that such indorsements were authorized where he asserts such claim as a defense.

3. EVIDENCE, § 253*—*when book entries admissible in favor of party required to produce books in evidence.* Where a defendant calls upon the plaintiff for the production of books and uses certain entries therein to establish its claim for credits without making any proof required by statutes as to their regularity, plaintiff becomes entitled to use other entries to explain or contradict the effect claimed for the entries adduced by defendant.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed January 12, 1914. *Certiorari* granted by Supreme Court.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

**Statement by the Court.** This is an appeal by the United States Express Company, hereinafter called defendant, from a judgment obtained by the Hamlins Wizard Oil Company, hereinafter called plaintiff, in an action brought to recover the amount of certain checks and drafts payable to plaintiff's order and remitted to it by its customers, but which through forged indorsements came into the hands of defendant, which received and collected the proceeds thereof.

Briefly narrated, the transactions giving rise to this suit were as follows: One A. M. Walsh became a bookkeeper for plaintiff in 1901 and continued as such until February 15, 1910, when he suddenly left plaintiff's employment, and died about two weeks thereafter. An audit of plaintiff's books was begun about the time he left but was not completed until after his death, which disclosed that Walsh was a defaulter to the extent of about $50,000, his frauds commencing shortly after he became bookkeeper and continuing during the entire period of his service.

Plaintiff's office clerical force consisted of Walsh, two girl stenographers and two or three girl clerks.

Walsh's salary as bookkeeper was about $25 a week or $1,300 a year. Besides keeping books Walsh did other clerical work, such as opening mail in the absence of the officers of the company, making small disbursements upon the authority of the officers, and attending to the depositing of checks payable to plaintiff, which were indorsed for deposit with a rubber stamp.

For the purpose of remitting salaries to traveling salesmen on the road, and of making remittances to customers for breakage, freight, etc., plaintiff had for nearly twenty years prior to 1910 been in the habit of buying express money orders from the defendant. It was part of Walsh's duty to buy these money orders when directed so to do. When money orders were to be bought he was furnished with checks, or cash of sufficient amount to cover the orders to be procured, and it was his duty to procure the orders and return them to the officers of the company.

The audit and investigation above referred to disclosed that Walsh had perpetrated his frauds by forging the plaintiff's indorsement on the back of customers' checks and drafts to its order, and disposing of the checks and drafts for his own benefit. A large number of them were disposed of by him at the defendant's money order department. The present suit is upon one hundred such checks and drafts, covering a period of a little less than five years prior to the commencement of this suit, all of which were received by the defendant from Walsh and collected by it under indorsements of plaintiff's name forged by him. Nearly all of these customers' checks and drafts were indorsed by Walsh in this form: "Pay to the order of the United States Express Co., Hamlins Wizard Oil Co., J. A. Hamlin, President." In other instances they purported to bear the signature of L. B. Hamlin, President, or L. B. Hamlin, Vice-president. They were delivered by Walsh to one L. B. Richardson, who at that time had charge of the money order department of the defendant. Richardson gave Walsh in exchange for these checks and drafts money orders of the defendant and cash for any excess in the amount of the check or draft above the total amount of the money orders. Richardson testified that for eight years before Walsh was employed the plaintiff had always bought its money orders from the defendant with checks drawn by the Hamlins Wizard Oil Company.

The money orders which were given in exchange for the one hundred checks and drafts in controversy fall into three classes: First, money orders payable to the order of third persons with whom plaintiff never had any dealings; second, money orders payable to the order of plaintiff's traveling salesmen or customers, which were duly collected by the respective payees under their genuine indorsements and which were duly charged by Walsh to the payees on the plaintiff's books of account; third, money orders payable

496    APPELLATE COURTS OF ILLINOIS.

Hamlins Wizard Oil Co. v. U. S. Express Co., 184 Ill. App. 493.

to the order of plaintiff's salesmen or customers, which Walsh cashed under indorsement of the payees' names forged by him. No entries appear on plaintiff's books as to any of these money orders.

In the case of the one hundred customers' checks and drafts sued on, and in the case of all other customers' checks and drafts stolen by Walsh, he credited the customers' accounts in the ledger with the amounts, but failed to make the corresponding charges to the plaintiff's bank of deposit, in the journal. Under plaintiff's system of bookkeeping checks and drafts received from customers were not entered in the cash book, which was merely a petty cash book, but were transferred from the journal to the ledger, the customers being credited and the bank of deposit charged with the amount of the check. In order to cover up these frauds Walsh made corresponding false entries in various ways in order to force his books to a balance.

The court directed a verdict for plaintiff for the amount of the one hundred customers' checks and drafts with interest, less the amount with interest of the money orders of class 2, *supra,* and a few others which were duly charged against the payees on plaintiff's books of account. This deduction was made apparently on the theory that since plaintiff actually got the benefit of them it was only just that the defendant should be credited with them, though they were in fact bought with part of the proceeds of the stolen checks and drafts. The amount of the verdict arrived at in this manner was $20,005.84, upon which judgment was entered.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; SILAS H. STRAWN, EDWARD W. EVERETT and WALTER H. JACOBS, of counsel.

HAMLIN & BOYDEN and LOUIS M. GREELEY, for appellee; MORRIS ST. P. THOMAS, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

The defendant claims as a ground for reversal that plaintiff was guilty of negligence in failing to discover Walsh's misconduct, thereby causing the loss complained of, and, therefore, because of such negligence, plaintiff cannot recover from the defendant. It is argued that an audit of plaintiff's books would have disclosed Walsh's peculations, and that plaintiff owed to defendant the duty of so examining its books as to prevent such losses.

The cases cited to support this contention are cases having to do with a suit by a depositor against his bank to recover the amount of a forged or altered check which the bank had improperly paid and charged against the depositor's account. In such a case it was held to be the duty of the depositor to examine within a reasonable time the returned canceled checks and to give the bank timely notice of any irregularities he might discover, so that the bank could protect itself and be on guard against similar impositions in the future. A typical case is *Leather Manufacturers' Bank v. Morgan*, 117 U. S. 96, where the Court said: "If he (the depositor) had discovered that altered checks were embraced in the account, and failed to give due notice thereof to the bank, it could not be doubted that he would have been estopped to dispute the genuineness of the checks in the form in which they were paid."

But we cannot hold this rule applicable to the case before us, for the reason that the relations between the plaintiff and the defendant were not those of a depositor and his bank, but were simply those of a customer and a seller. Defendant was in the business of selling money orders to any one wishing to buy, and the plaintiff, when it desired, purchased them from defendant. Plaintiff owed defendant no higher duty than it owed to the parties from whom it bought its supplies used in its business. There were no relations of mutual trust and confidence imposing recip-

498    APPELLATE COURTS OF ILLINOIS.

Hamlins Wizard Oil Co. v. U. S. Express Co., 184 Ill. App. 493.

rocal duties as exist between a depositor and his bank. There being no duty owing to the defendant that could affect plaintiff's methods of bookkeeping, it follows that any failure by plaintiff to audit its books is not such negligence as can avail as a defense. Among the cases sustaining this view in extended opinions are *People v. Bank of North America,* 75 N. Y. 547; *Shepard & Morse Lumber Co. v. Eldridge,* 171 Mass. 516; *Dispatch Printing Co. v. National Bank of Commerce,* 115 Minn. 157.

In *Jordan Marsh Co. v. National Shawmut Bank,* 201 Mass. 397, and in *Shipman v. Bank of State of New York* 126 N. Y. 318, where negligence of the plaintiff was claimed as a defense, under facts similar to the facts in the case before us, it was held that the negligent manner of plaintiffs in transacting their business with reference to checks was not the proximate cause of the loss, but that the proximate cause of the checks being paid upon fraudulent indorsements was the failure of the defendants to see that the indorsements upon the checks were genuine.

It should be noted that under the scheme followed by Walsh the forgeries in question would not have been readily discovered from usual bookkeeping inspection, and it would be only a guess to say that a discovery of his wrongdoing in other particulars would have led to the discovery of this particular method of obtaining money. Considerable argument is indulged in upon the point that an investigation of Walsh's conduct would have disclosed that he was spending more for his personal wants than- the amount of his salary would warrant, and that much of his expenditures was made in saloons and other places with which plaintiff had no business connection. If we are correct in holding that plaintiff owed no duty to the defendant as to the manner in which plaintiff kept its books of account, it certainly cannot be said that plaintiff owed the defendant any duty with regard to

the habits and manner of living of plaintiff's employes.

Defendant concedes that Walsh had no express authority to indorse checks and drafts, but argues that there is evidence from which such authority may be inferred. We find no such evidence in the record; in fact, the evidence negatives any such inference. No such inference can be drawn from the mere fact that Walsh was the messenger sent to defendant's office to buy money orders with checks already indorsed. Nothing occuring between him and the defendant could be said to contain any suggestion that Walsh was indorsing the checks. They purported to be indorsed by the president or vice president of the plaintiff Company, and it is evident that Walsh conducted himself so as to inspire a belief that the indorsements were made by the persons purporting to have made them. It was not part of his scheme to lead the defendant to believe that the indorsements were made by himself, but rather that they should be considered as genuine.

Defendant is in error in its contention that it was necessary for the plaintiff to prove not only that the indorsements were not genuine, but also that they were unauthorized. If defendant claimed in defense that the indorsements were authorized, the burden was upon it to make this proof, and not upon the plaintiff. It is so held in *Schroder v. Harvey,* 75 Ill. 638, and *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151. Decisions stating the rule in criminal cases are not in point.

There was no error in the use of the books of plaintiff. In the introduction of plaintiff's evidence in chief no books were used. Defendant then called for them and used certain entries therefrom to establish its claim for credits, without making any proof required by the statute as to their regularity. Plaintiff therefore became entitled to use other entries to

explain or contradict the effect claimed for the entries adduced by defendant.

In *Boudinot v. Winter*, 190 Ill. 394, the Court said:

"We know of no principle that will enable a party to a suit to call upon his adversary for the production of documentary evidence, and, when it is so produced, claim the benefit of such part or portion thereof as may be to his advantage, and, at the same time, reject such part as tends against him, and also deprive his opponent of the right to its use."

We might also say that defendant suffered no harm from this use of the books by plaintiff.

Complaints are made of many rulings of the court on the admissibility of evidence. Some of the objections are highly technical. In other instances, where objections to questions were sustained, the testimony sought was already in evidence. Other points are met by what we have said concerning the absence of any duty from plaintiff to defendant in regard to plaintiff's manner of conducting its business.

The facts are not in dispute. The only questions involved are ones of law. In our view of the case the trial court committed no error in instructing the jury as he did, and the judgment will be affirmed.

*Affirmed.*